## No. 79SA348

## The People of the State of Colorado v. Thomas E. Traubert

(608 P.2d 342)

Decided March 17, 1980.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Tague, Goss, Schilkin & Beem, P.C., Marjorie J. Platt, P. Arthur Tague, for defendant-appellant.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

This interlocutory appeal is taken by the prosecution from an order of the district court suppressing certain articles seized from the defendant's person, the defendant's confession, and items seized from the defendant's automobile. We reverse in part, affirm in part, and remand this case to the district court for further proceedings consistent with the views expressed in this opinion.

On the evening of February 18, 1979, a parking lot attendant for the Rainbow Music Hall observed the defendant, Thomas E. Traubert, and another individual attempting to gain entry into the Majestic Products Building through a secured window. Suspecting that a break in was occurring, the attendant informed two Denver policemen, who were working off-duty at the Hall, of his suspicions, and pointed out the individuals to the officers. The individuals were standing beside the Majestic Products Building underneath a window which had had its security screen partially removed.

As the officers approached the building, the individuals began to walk away rapidly toward the street, and each dropped something behind him. Two large screwdrivers and a pair of plastic gloves were subsequently

found by the officers. The officers arrested the individuals, conducted a brief pat down for weapons, and escorted them to a security room in the Hall.

Once inside the security room, the individuals were advised of their *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Officer Meyer conducted a more thorough search of the individuals' clothing and discovered a ring in the defendant's pocket. Upon being asked if the ring belonged to him, the defendant replied "Oh, yeah, that's mine." Officer Meyer also found a number of other rings in the defendant's pockets, including several women's wedding rings. The defendant again claimed ownership of these rings, but, upon being queried as to his asserted ownership of women's wedding rings, stated that "I think I need to see an attorney."

Car keys were also found in the defendant's pocket. Another officer, Officer Barnhill, took the keys, which were marked "Ford," and returned to the parking lot to locate the defendant's automobile. Although Officer Meyer ascertained the location of the defendant's automobile through a question directed at the defendant, it appears from the record that Officer Barnhill located the defendant's vehicle by trying the Ford keys in every Ford parked near the location of the attempted break in.[1] When the defendant's automobile was located, Officer Barnhill conducted a brief visual search of its interior and seized a wallet on the front seat. The officer then arranged for the vehicle to be towed to the city pound.

Later that evening, the defendant was taken to the city jail and charged with attempted burglary. On the following morning, Officer Gold met with the defendant and informed him that he was investigating the attempted break in at the Majestic Products Building. At that time, Officer Gold advised the defendant of his *Miranda* rights and asked him if he wished to make a statement. The defendant answered in the affirmative, and made several inculpatory statements to Officer Gold about the attempted break in and about an earlier burglary of a residence where several rings were taken. The defendant, however, declined to sign a written statement.

At approximately 3:00 p.m. the following day, Officer Gold requested that the defendant consent to a search of the impounded vehicle. The defendant asked the officer how he could go about getting his car released. Officer Gold replied that the car would not be released until the conclusion of his investigation and that if the defendant did not consent to the search, he would try and get a search warrant. The defendant signed a

---

[1] Although the trial court found that the location of the defendant's car was obtained from the defendant after the exercise of his *Miranda* rights, the defendant concedes on appeal that the record shows that Detective Barnhill located the vehicle without the aid of statements made by the defendant. Accordingly, we will disregard the finding of the trial court on this issue.

consent to search form, and the subsequent search produced evidence of the residential burglary which occurred prior to the attempted break in at the Majestic Products Building.

Before the trial for second-degree burglary, conspiracy to commit second-degree burglary and theft, defense counsel moved to suppress all evidence seized from the defendant or his car and all statements made by the defendant. After a hearing, the trial court granted the defendant's motion, holding (1) that the evidence seized on the defendant's person was not derived from a valid search incident to an arrest; (2) that the defendant's inculpatory statements were obtained after the defendant requested a lawyer; (3) the defendant's car keys were seized illegally, which tainted the seizure of evidence in the automobile, and required that the evidence be suppressed.

## I.
### Search Incident to Arrest

Although the trial court found that there was probable cause to arrest the defendant, the court held that the scope of the search of the defendant's person exceeded the bounds of a valid search incident to an arrest. Relying on *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996 (1963), the court stated that a search incident to an arrest could constitutionally extend only to a search for the fruits and instrumentalities of the crime for which the person was arrested. The officers had already recovered the burglary tools used in an attempt to secure entry into the Majestic Products Building. Since the defendant had been frisked for weapons and did not gain entry to the building, there could be no possible fruits of the crime. Therefore, the court held that there was no justification for the search of the defendant's pockets. We disagree.

In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), a case which postdated our decision in *Hernandez*, the United States Supreme Court held that a search incident to an arrest constituted an exception to the warrant requirement, provided that the search was limited to the arrested person and the area within his control. In language that is directly applicable to the case before us, the Court stated that:

"The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found on the person of a suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to an arrest requires no additional justification."

Given this clear statement of an officer's authority to conduct a search following a custodial arrest, we hold that the limitations imposed in

*Hernandez* are no longer viable. Indeed, in *Gufstafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Supreme Court impliedly rejected the argument that a reviewing court could invalidate a search incident to an arrest because there was no evidentiary purpose for the search. Under the authority of *Robinson* and *Gufstafson*, the officer, after a custodial arrest may properly search the defendant and seize all "contraband or articles, the possession of which gives the police officers reason to believe a crime has been committed, even though such articles do not relate to the crime for which the defendant was initially arrested."[2] *People v. Ortega*, 181 Colo. 223, 508 P.2d 784 (1973).

## II.
### Waiver of Miranda Rights

■ Questions involving the exercise or waiver of a defendant's rights guaranteed under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) invariably require the trial court to weigh the credibility of opposing witnesses and to resolve conflicting testimony. When there is evidence to support the trial court's findings of fact as to the voluntariness of a confession, the findings of the trial court will not be disturbed on appeal. *People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978); *People v. Pineda*, 182 Colo. 385, 513 P.2d 452 (1973); *People v. Medina*, 180 Colo. 56, 501 P.2d 1332 (1972). In addition, since the rights involved are of constitutional magnitude, a heavy burden rests upon the prosecution to demonstrate a waiver of the constitutional privilege against self-incrimination and the right to counsel. *See e.g. People v. Richards*, 194 Colo. 83, 568 P.2d 1173 (1977); *People v. Harris*, 191 Colo. 234, 552 P.2d 10 (1976). The standard to be applied is proof of "an intentional relinquishment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Where the defendant has requested that he be given a chance to speak with an attorney prior to being questioned, we have placed an even higher burden on the party seeking to show a waiver of that right. In *People v. Harris, supra*, we stated:

"The defendant made a request for an attorney, and the police officers were thereby placed on notice that the defendant intended to exercise his constitutional rights. Admittedly, the demand was not in the most sophisticated or legally proper form, but it was adequate. At that point, all interrogation should have ceased until an attorney was made available to the accused."

---

[2] By our holding we do not intend to cast doubt on the vitality of the line of cases beginning with *Cowdin v. People*, 176 Colo. 466, 491 P.2d 569(1971), which involve arrests for violations of minor municipal ordinances and routine traffic regulations and limit the scope of searches incident to these types of arrests to a protective pat-down search. *See e.g. People v. Clyne*, 189 Colo. 412, 541 P.2d 71 (1975); *People v. Valdez*, 182 Colo. 80, 511 P.2d 472 (1973).

Once the accused has requested counsel, the police officers must cease interrogation immediately and must, within a reasonable period of time, provide the accused with an opportunity to talk to an attorney.

In this case, the record shows that the defendant exercised his *Miranda* rights by requesting the right to see an attorney. Although the defendant's statement "I think I need to see an attorney" was neither "sophisticated" nor, perhaps, in a "legally proper form," it was sufficient under *Richards, supra,* and *Harris, supra,* to put the police officers on notice that the defendant intended to exercise his constitutional rights to counsel. At this point, the police should have ceased all questioning until the defendant was given a reasonable opportunity to contact his attorney. Instead, Officer Gold sought out the defendant on the morning after his arrest, and initiated a new round of questioning to elicit information about the attempted break in. The fact that Officer Gold secured a written waiver does not eliminate the constitutional issue in this case relating to the defendant's right to counsel.

Since there is evidence in the record to support the trial court's finding that the waiver was constitutionally infirm, the suppression of the confession will not be disturbed on appeal. Although we do not rule out the possibility of a valid waiver after the defendant has requested an attorney, we note that the right to an attorney is unique in that it is often the keystone to protection of a defendant's other constitutional rights. "If the police may try to subtly secure a waiver of rights after the accused has requested an attorney, the rights guaranteed by *Miranda* would be illusory." *Richards, supra.*

## III.
### *The Consent Search*

The trial court finally held that because the seizure of the defendant's keys was not valid as part of a search incident to an arrest, the resulting seizure of the defendant's automobile and the procurement of the consent to search were tainted from the prior illegality and should be suppressed as the "fruit of the poisonous tree." *See Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Because we upheld the validity of the search incident to arrest in Part I of this opinion, we reverse the trial court's order suppressing all evidence derived from the automobile search. We remand this case, however, for a further hearing to determine whether the defendant's consent was voluntary and, in addition, to determine whether other grounds exist for the suppression of evidence derived from the search under the fruit of the poisonous tree doctrine. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In the hearing on remand, the trial court should first consider whether evidence derived from the search should be suppressed as the fruit of either the *Miranda* violation considered in part II of this opinion, or, in the alternative, as fruit of an illegal seizure of the defendant's automobile.

As to the *Miranda* violation, we note that the record shows that the defendant discussed his participation in the home burglary during the course of his confession to Officer Gold. Accordingly, the trial court should consider whether the defendant's consent was derived through an exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *See* 3 W. LaFave, *Search and Seizure*, § 11.4 at 613 (1978).

The possibility that the defendant's car was seized illegally presents a second issue for determination under the fruit of the poisonous tree doctrine. *Wong Sun v. United States, supra.* The record indicates that the police officers lacked probable cause to believe that the defendant's car contained contraband or evidence of a crime, and, in addition, that there was no reason for them to believe that the car itself was evidence of a crime. *Cf. Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Accordingly, on remand the burden of proof is on the prosecution to either show that the initial search and seizure of the defendant's automobile was properly predicated upon consent or, instead, demonstrate the presence of other lawful authority for the seizure.

On remand, the trial court should also consider whether the defendant's consent to the search of his automobile was voluntary under the standards set out in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The factors which are relevant to determination of the voluntariness issues under the Fourth Amendment are peculiarly within the province of the trial court. Some relevant factors to be considered, however, are that the defendant was incarcerated, he had exercised his *Miranda* right to have an attorney present, and that the impoundment of the defendant's car may have been unlawful. As a counterbalance, the trial court should weigh the fact that a written consent was given and that the defendant was advised of his right to refuse to consent to the search. The totality of the circumstances surrounding the purported waiver must be considered to determine voluntariness. *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971).

## IV.

### Constitutional Issues

The defendant raises several challenges to the constitutionality of the interlocutory appeal provisions of C.A.R. 4.1 which will be addressed summarily. First, the defendant asserts that no authority has been conferred by either the Colorado Constitution or the general assembly for the filing of an interlocutory appeal. This argument, however, is forcefully rebutted by the plain language of section 16-12-102, C.R.S. 1973 (now in 1978 Repl. Vol. 8) which states: "The prosecution may appeal any *decision* of the trial court in a criminal case upon any question of law." (Emphasis added.) The section contains no language which would limit

the right to appeal solely to final judgments of the trial court. *Cf.* section 16-12-101, C.R.S. 1973 (now in 1978 Repl. Vol. 8).

The defendant also argues that C.A.R. 4.1 violates the Equal Protection provisions of both the Colorado and the United States Constitutions. According to the defendant, since C.A.R. 4.1 allows only the prosecution to enter an interlocutory appeal, the defendant's Equal Protection rights have been denied. In our view, it is sufficient to point out that the defendant's argument is bottomed on the unfounded premise that the prosecution and the defendant are similarly situated in a criminal trial. Since the prosecution is precluded from placing a defendant in double jeopardy after a verdict has been rendered, its only meaningful avenue of appeal must be found in a pre-judgment proceeding. The provisions of C.A.R. 4.1 do not interfere with the defendant's rights to appeal his conviction after a verdict has been reached, and we find no denial of Equal Protection rights. The defendant's other contentions are without merit.

Accordingly, the ruling of the trial court is reversed in part, affirmed in part, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

JUSTICE GROVES and JUSTICE LEE do not participate.