**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Deborah M. CEREZO, Defendant-Appellee.**

**No. 81SA324.**

Supreme Court of Colorado, En Banc.

Oct. 5, 1981.

Alexander M. Hunter, Dist. Atty., Peter A. Hofstrom, Chief Deputy Dist. Atty., John E. Maas, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

I. Melvin Tatsumi, Carl F. Manthei, Boulder, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the ruling of the district court suppressing a custodial statement made by the defendant, Deborah M. Cerezo, to a police detective during the course of a re-interrogation after she previously had invoked her constitutional right to counsel. We affirm the suppression order.

The defendant is charged with murder in the first degree after deliberation, section 18–3–102(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), and conspiracy to commit that offense, section 18–2–201, C.R.S.1973 (1978 Repl.Vol. 8). She moved to suppress three separate statements made by her on February 10, 1981, in the state of Florida. The court denied the motion to suppress the first two statements but granted a motion to suppress the third statement and it is that order which the People contest in this appeal.

The charges in this case arise out of the death of Mary Ann Bryan, who was abducted from a Longmont drugstore on January 28, 1981, and was bludgeoned to death. Her body was found on January 31 in an outhouse along the side of a road approximately 3½ miles west of the town of Lyons in Boulder County, Colorado. The Boulder County Sheriff's Department investigated the homicide and suspected a contract-murder involving several persons including Herbert David Marant, who was the victim's ex-husband, as well as Bob Landry and the defendant. All the suspects resided in the state of Florida.

In early February Thomas Shomaker and other officers of the Boulder County Sheriff's Department traveled to Florida to investigate the homicide. Several officers of the Sheriff's Department of Broward County, Florida, assisted in the investigation. During the afternoon of February 10, Shomaker and Broward County Detective Don Scarborough went to an apartment complex in West Miami, Florida, in order to question the defendant about a vehicle which she had rented in Denver, Colorado, on January 27, 1981, and which matched the description of the vehicle involved in the abduction of Mary Ann Bryan. During a brief interrogation at her apartment the defendant admitted that she recently had taken a trip to Colorado with Bob Landry and had rented a vehicle in Denver (the first statement). Officer Shomaker, after telling the defendant that he wanted her to discuss the trip in more detail and to view some pic-

tures, requested her to accompany him for these purposes to the Broward County Sheriff's Office in Fort Lauderdale, Florida.

After arriving at the sheriff's office at about 5:00 p. m., the defendant was brought to an interview room and was advised of her *Miranda*[1] rights by Officer Shomaker and Detective Scarborough. She acknowledged her understanding of these rights and agreed to talk to the officers. At 6:00 p. m. she made a statement describing two recent trips to Colorado with Bob Landry and her rental of a motor vehicle on January 27 during the last trip (the second statement). At approximately 6:30 p. m., in the course of this second statement, she stated, "I think I better have a lawyer." The officers at this point left the interview room. No effort was made by the officers to secure legal counsel for the defendant.

There followed a 45 minute discussion among several officers, including Broward County Detective Mark Schlein, about the propriety of any further interrogation in view of the defendant's request for an attorney. Officer Shomaker testified that due to the defendant's request for an attorney he decided any further interrogation would constitute a violation of her rights. He further testified that the consensus among the officers was that an additional statement from the defendant would be important for investigative purposes and that Detective Schlein although realizing any further interrogation might be illegal, decided to obtain a statement. According to Shomaker's testimony, Detective Schlein told the officers during the discussion: "Shomaker's already been removed. He's already broken off his interrogation. Let's remove him completely from the [next] statement, and I'll take whatever heat for [that] statement." Detective Schlein, on the other hand, testified that the decision was made to terminate all interrogation of the defendant and his purpose in later entering the interview room was to look after the defendant's comfort and to ask her whether she had to use the bathroom or wanted a cup of coffee.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

It was undisputed that after the officers' discussion about the propriety of further interrogating the defendant, Detective Schlein at 7:30 p. m. entered the interview room where the defendant had been confined alone after giving her previous statement to Officer Shomaker and Detective Scarborough. He provided the defendant with coffee and escorted her to the restroom and then back to the interview room. The defendant then asked Detective Schlein how things looked for her. He told her that she was in the most serious trouble of her life. The defendant asked the detective "What would you do?," to which he responded: "I would either remain completely silent or I would be completely truthful; I would not lie." The defendant next inquired about the probability of a "deal" and, after telling her that there would be no deals, the detective suggested that she think about her situation and he left the room.

Detective Schlein returned to the interview room at 8:30 p.m. and the defendant stated "I would like to talk." After again acknowledging and waiving her *Miranda* rights, the defendant at 8:41 p. m. gave a lengthy recorded statement describing her role in the killing (the third statement).

The court suppressed the third statement for the following reasons:

"The law is clear that once a person in custody asks for an attorney, all questioning must cease. It is obvious that the Florida detective was determined to get a statement by whatever means, even though Colorado authorities tried to convince him otherwise. This court feels the detective's conduct was contrived and illegal." [2]

The People argue that there is no evidence to support the court's finding concerning Detective Schlein's conduct and that the court should have determined under *Edwards v. Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), that the third statement resulted from the defendant's initiation of communication with the police rather than from police interrogation. We are not persuaded by the People's arguments.

■ There is an evidentiary basis in the record for the court's finding regarding the impropriety of Detective Schlein's conduct. The defendant's statement at 6:30 p. m. that "I think I better have a lawyer" was a clear assertion of her right to counsel. Her statement was almost identical to the language in the *Miranda* advisement previously given her and there can be no doubt that the officers understood her statement to be a request for an attorney. *See People v. Richards*, 194 Colo. 83, 568 P.2d 1173 (1977). Notwithstanding her request, Detective Schlein and other officers for the next 45 minutes discussed among themselves whether they should attempt further interrogation. According to Officer Shomaker's testimony, it was during their discussion that Detective Schlein volunteered to "take the heat" for any subsequent statement, thereby clearly indicating his intent to obtain a statement from the defendant. He spent the next hour intermittently with the defendant in accomplishing his objective. The obvious disregard of the defendant's request for an attorney, coupled with Detective Schlein's subsequent contacts with the defendant, provide adequate support for the trial court's determination that Detective Schlein's conduct was "contrived and illegal." "Once the accused has requested counsel, the police officers must cease interrogation immediately and must, within a reasonable period of time, provide the accused with an opportunity to talk to an attorney." *People v. Traubert*, Colo., 608 P.2d 342, 346 (1980); *see also People v. Richards, supra; People v. Harris*, 191 Colo. 234, 552 P.2d 10 (1976).

**2.** The trial court concluded that the third statement was voluntary in the constitutional sense and therefore could be used for impeachment purposes should the defendant elect to testify at trial. *See, e. g., Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The court also denied the motion to suppress any conversation between defendant and Detective Schlein prior to the defendant's decision to give the third statement. These aspects of the court's ruling are not before us at this time and we express no opinion on them.

Turning to the People's principal contention, we reject their argument that *Edwards v. Arizona, supra,* requires a reversal of the suppression order. In *Edwards* the United States Supreme Court considered the question whether the Fifth, Sixth and Fourteenth Amendments require the suppression of a post-arrest confession which was obtained after an accused already had invoked his right to counsel before a subsequent interrogation resulting in the confession. After his arrest for murder and other crimes, Edwards waived his *Miranda* rights and willingly submitted to questioning, gave an exculpatory statement, and later said "I want an attorney before making a deal." Questioning then ceased but the next day the officers came to the jail and, after again informing Edwards of his *Miranda* rights, questioned him and obtained a confession after he said he was willing to talk. Noting that an accused's request for an attorney is *per se* an invocation of Fifth Amendment rights and that it is inconsistent with *Miranda* to reinterrogate an accused after a clear assertion of the right to counsel, the Court concluded that Edwards' statement, "made without having had access to counsel, did not amount to a valid waiver and hence was inadmissible." —— U.S. at ——, 101 S.Ct. at 1886, 68 L.Ed.2d at 388. The precise holding of the case was as follows:

> "[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." —— U.S. at ——, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386.

Although *Edwards* permits an accused to recant an exercise of *Miranda* rights by communication, exchange or conversation with the police for the purpose of making a statement, the Court's holding was not intended to be, nor can it reasonably be construed as, a warrant for law enforcement officers to disregard the accused's initial request for an attorney during interrogation and to engage in conduct calculated to induce the accused to make a statement without the intervention of legal advice. Under *Edwards,* the validity of an accused's subsequent waiver of *Miranda* rights is premised on law enforcement's scrupulous respect for the accused's invocation of *Miranda* rights at the outset. —— U.S. at ——, 101 S.Ct. at 1885, 68 L.Ed.2d at 386–87; *see also Michigan v. Moseley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *People v. Chavez,* Colo., 632 P.2d 574 (1981).

Here, the record belies any notion that the defendant's exercise of her constitutional rights was honored. There is no evidence suggesting that Detective Schlein entered the interview room at 7:30 p. m. because the defendant initiated a request to speak with him in spite of her previous request for an attorney. On the contrary, the suppression testimony of Officer Shomaker supports the conclusion that Detective Schlein made the decision to obtain a statement from the defendant notwithstanding her request to confer with an attorney. He remained in close contact with the defendant and engaged in several conversations with her to accomplish this purpose. His subsequent re-entry into the interview room at 8:30 p. m., at which time the defendant stated that she wanted to talk, was part of what the trial court characterized as "contrived and illegal" conduct. *Miranda* and its progeny do not permit the police to ignore an accused's request for an attorney, to hold that person incommunicado without any effort to provide counsel, and then to engage in conduct directed at obtaining a written waiver of rights and ultimately a confession.

Given the evidence establishing an obvious disregard of the defendant's request for

counsel, and considering the heavy burden resting upon the prosecution to establish a knowing, intelligent and voluntary waiver of *Miranda* rights, *e. g., Edwards v. Arizona, supra; Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *People v. Chavez, supra; People v. Traubert, supra,* we conclude that the trial court did not err in suppressing the defendant's confession.

The ruling is affirmed.

LEE, J., does not participate.