The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Raymond BALL, Defendant-Appellee.

The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Gerianne BALL, Defendant-Appellee.

Nos. 81SA456, 81SA457.

Supreme Court of Colorado,
En Banc.

Feb. 1, 1982.

Terrance Farina, Dist. Atty., James R. Alvillar, Chief Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.

Haddon, Morgan & Foreman, P. C., Lee D. Foreman, Denver, for defendant-appellee.

QUINN, Justice.

In this consolidated interlocutory appeal [1] the People, pursuant to C.A.R. 4.1, challenge the district court's suppression of various items of evidence consisting of marijuana, cocaine, money and drug paraphernalia seized in the course of a search pursuant to warrant. The court ruled that the affidavit filed in support of the search warrant did not establish probable cause for the search. We reverse the suppression ruling.

## I.

By separate information the defendants, Raymond and Gerianne Ball, husband and wife, are accused of two drug offenses allegedly committed on May 2, 1981, in Mesa County, Colorado. One count charges the defendants with possession of a narcotic drug, cocaine, sections 12–22–302 and 322, C.R.S.1973 (1980 Supp.), and the other count alleges possession of a dangerous drug, cannabis, with intent to dispense, section 12–22–412(3), C.R.S.1973 (1980 Supp.). The charges stem directly from evidence seized in the course of a search pursuant to warrant of the defendants' residence at 616 28¾ Road in Grand Junction, Colorado, on May 2, 1981.

On April 30, 1981, Mesa County Deputy Sheriff Harry Oxford filed an affidavit with the Mesa County Court requesting the issuance of the warrant. The affidavit recited that Oxford had been assigned to drug enforcement for 3½ years and had considerable experience in that line of work. It further stated that on or about March 27, 1981, Lois Arbogast, who resided at 614 28¾ Road in Grand Junction, contacted the Sheriff's Office to report an unusually large volume of traffic at the defendant's residence with resulting visits of short duration by various persons. Paragraphs 4 through

6 of the affidavit recited that Officer Oxford, Officer Don Hampton and Lois Arbogast conducted a surveillance of the defendants' residence between April 1 and April 25, 1981, during which period the following observations were made:

"4. [M]ore than 196 individual visits by 90 individual vehicles were made to the residence at 616 28¾ Road, Grand Junction, Colorado. During this time period, Mrs. Arbogast and myself observed numerous subjects walking to the door of the aforesaid residence ... from their vehicles pulling out their wallets. Also, on several occasions, subjects were seen returning to their vehicles and sharing or giving other occupants objects or parcels too small to be seen at night with only the door lights on.

"5. While on surveillance on April 21, 1981, I observed a vehicle, namely a 1978 Ford Pickup with Colorado Truck License Number NL1677, parked in front of the aforesaid residence . . . and a subject enter the residence and later return to the truck, while leaving the dome light on in the truck, and the subject brought a small device to his nose—based on my experience in the drug and narcotic field, and also based on the fact that he performed some actions on the truck seat before bringing the device to the nostrils of his nose, I believe he was sampling by spoon a quantity of cocaine by inhalation.

"6. On April 23, 1981, I observed a vehicle which according to the Motor Vehicle Registration Records was registered to Jerry Jompp pull up into the yard of the aforesaid residence at 616 28¾ Road and stop. The three individuals in the vehicle exited into the yard and when leaving all three passed around a cigarette, taking long inhalations thereof in a manner consistent to be with the smoking of marijuana." [2]

---

1. Both defendants, although separately charged, filed identical motions to suppress, which were consolidated for hearing by the district court. The court entered the identical ruling in each case and, although separate interlocutory appeals were taken, the facts and issues are identical in both cases. Accordingly, we have ordered the cases consolidated for purposes of this appeal.

2. The affidavit also recited in paragraph 7 that during the period of surveillance one of those entering the defendants' residence was Robert William Pepper who had been arrested on April 4. 1980, for possession of marijuana, and subsequently was in the company of Brian Carmack when drugs were seized from Carmack's vehicle. The court ruled that paragraph 7 contributed nothing to the existence of probable cause, stating "[i]nference of wrong doing may

On August 6, 1981, the court conducted a hearing on the defendants' motions to suppress. The defendants elicited testimony from Deputy Sheriff Oxford that in conducting the surveillance of the defendants' residence he directed Lois Arbogast to keep a notebook of all vehicular traffic at the residence and to make a written notation of the date and time of the observations, the description and license numbers of the vehicles, and the number and description of the occupants. Oxford also testified as follows:

"Q In fact, is that the notebook that was given to you by Mrs. Arbogast containing the information that she put down at your request?

"A This belongs to her. She used it; her husband used it; myself—I believe I have a few notations in there.

\* \* \* \* \* \*

"Q It is your understanding that she wrote down some of that and her husband wrote down some of that; you yourself wrote down some of that?

"A We had a number of conversations and worked it out on what the information was that we needed.

"Q All of that information ultimately was incorporated when you collated and came up with some of the material you put into the affidavit?

"A Yes, sir."

The court suppressed the evidence and ordered $12,000 in United States currency, which had been seized during the search, returned to the defendant, Raymond Ball.[3] Drawing principally from the standards of probable cause set forth in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the court based its suppression ruling on the following factors: (1) the affidavit failed to provide sufficient information to permit the issuing judge to determine the reliability of much of the information contained therein; (2) "the sources of the information in the affidavit were not entirely identified," particularly with respect to the notebook entries made during the period of surveillance; (3) the times at which various observations were made during the period of surveillance were not precisely specified and, therefore, much of information was stale; (4) the affidavit "coupled speculation with the association of drug users as a substitute for facts and knowledge of wrong doing or the existence of evidence or contraband at the premises." We conclude that the court's suppression ruling is based upon a hypertechnical application of the standard of probable cause to the averments in the affidavit.

## II.

"Probable cause" involves a level of knowledge grounded in the practical considerations of everyday life on which reasonable and prudent persons act. *E.g.,*

---

not be imputed to people because of their mere association with others...."

Paragraph 8 of the affidavit stated:

"8. During the surveillance between April 1 and 25, 1981, one of the vehicles frequenting the aforesaid residence at 616 28¾ Road, according to the Motor Vehicle Records of the County was registered to Betty Seals. On April 20, 1981, I together with other officers responding to a disturbance call entered the residence of Mrs. Seals and observed marijuana paraphernalia in plain view. A consent search was also performed and a mirror containing suspected cocaine residue which was acknowledged by Mrs. Seals to be the same, together with several hypodermic needles and a folded piece of paper commonly referred to as a bindle containing the like residue were seized."

The court discounted paragraph 8 because, in its view, it "did not indicate that the possession of April 20 occurred prior to or after the vehicle visited the subject premises." Although we believe a non-technical reading of paragraph 8 must yield a different interpretation, consideration of this paragraph, as well as paragraph 7, is unnecessary to our determination of probable cause.

3. The district court concluded that the prosecution established a sufficient nexus between the currency and the drug activity at the defendants' residence to permit its seizure during the search. However, since the court believed the affidavit for the search warrant was defective, it ordered that the money be returned to the defendant. Since we conclude the affidavit did establish probable cause for the search, the district court's order as to the return of the money also is reversed.

*Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949); *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965). Probability, not certainty, is the touchstone of probable cause. *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). In a search pursuant to warrant the constitutional standard of probable cause requires that the affidavit allege sufficient facts to warrant a person of reasonable caution in the belief that contraband or material evidence of criminal activity is located on the premises to be searched. *E.g., United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Where probable cause is predicated on information from an undisclosed informer, the affidavit must allege sufficient facts from which the issuing judge may independently determine (1) the validity of the informer's belief that seizable objects are on the premises to be searched and (2) the credibility of the informer or the reliability of his information. *E.g., Spinelli v. United States, supra; Aguilar v. Texas, supra; People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971); *People v. Peschong,* 181 Colo. 29, 506 P.2d 1232 (1973). Information from an undisclosed informer, in addition to being hearsay, is colored with a certain aura of unreliability and courts require a special showing for probable cause in order to protect the warrant process from abuse. However, where the information utilized in support of a search warrant consists of the first hand observations of an identified citizen or a law enforcement officer, both the credibility of the source and the reliability of the information may be presumed and, therefore, need not be independently established in the affidavit. *See, e.g., United States v. Ventresca, supra; People v. Henry,* Colo., 631 P.2d 1122 (1981); *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971).

▆▆▆ In determining the issue of probable cause a court must interpret the affidavit "in a common sense and realistic fashion" and should not require "technical requirements of elaborate specificity." *United States v. Ventresca, supra,* 380 U.S. at 108–09, 85 S.Ct. at 746, 13 L.Ed.2d at 689;

*accord, People v. Lindholm,* 197 Colo. 270, 591 P.2d 1032 (1979); *People v. Whisenhunt,* 173 Colo. 109, 476 P.2d 997 (1970). Thus, while an affidavit must contain a sufficient statement of the time of the events relied upon to establish probable cause, it is not necessary that the timing of these events be delineated with exactitude or that the events themselves occur immediately prior to the issuance of the warrant. The test is whether the timing of the events is sufficiently set forth to justify a reasonable belief that seizable objects are present on the premises to be searched. *People v. Schmidt,* 172 Colo. 285, 473 P.2d 698 (1970); *People v. Montoya,* Colo.App., 616 P.2d 156 (1980); *People v. Erthal,* 38 Colo.App. 245, 556 P.2d 1228 (1976), *aff'd* 194 Colo. 147, 570 P.2d 534 (1977); *see generally* Annot., 100 A.L.R. 525 (1965). Also, due consideration should be given to a law enforcement officer's experience and training in determining the significance of his observations in the context of probable cause. *See, e.g., United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).

### III.

▆▆▆ When read "in a common sense and realistic fashion," it is apparent that Deputy Sheriff Oxford's affidavit contains ample facts to establish probable cause for the search of the defendants' residence. Contrary to the court's suppression ruling, the core information in the affidavit was not lacking in reliability. Paragraph 4 of the affidavit expressly identifies Mrs. Arbogast and the affiant as sources of the information pertaining to the high volume of traffic and activity occurring at the defendants' residence. Paragraphs 5 and 6 unequivocally identify the affiant as the source of information describing suspected drug activity at the defendants' premises on April 21 and 23, 1981. Where, as here, observations are made by a citizen-witness and a law enforcement officer, both of whom are identified as the source of their respective observations, there is no need to establish the reliability of their recounted observations by independent averments in the affidavit. Under such circumstances

the reliability of such information, as well as the credibility of the sources, legitimately may be presumed. *See, e.g., United States v. Ventresca, supra; People v. Henry, supra; People v. Glaubman, supra.*[4]

We next consider the significance of the affidavit's failure to mention Mr. Arbogast's participation in the surveillance activity. We do not believe this omission is of critical significance to the issue of probable cause. Admittedly, Deputy Sheriff Oxford testified at the suppression hearing that during the period of surveillance some observation of vehicular traffic had been made and noted by Mr. Arbogast. However, the affidavit's silence in this respect is not sufficient, by itself, to impair the veracity of the affiant's statement that both he and Mrs. Arbogast saw numerous persons "pulling out their wallets" while walking from their vehicles to the defendants' residence and, upon returning to their vehicles, these persons shared something with the occupants of the vehicles. The reliability of this stated information, based as it is on the personal observations of the affiant and Mrs. Arbogast, is not affected by whether and to what extent Mr. Arbogast also participated in the surveillance activity. Moreover, there is nothing in the record impugning the truthfulness of the statements in paragraphs 5 and 6 of the affidavit, which recite the personal observations of the affiant with respect to suspected drug activity at the defendants' premises on April 21 and 23, 1981. Under these circumstances we believe the failure of the affidavit to make reference to Mr. Arbogast's role in the surveillance was of no more than peripheral relevancy to the showing of probable cause and does not affect the validity of the affidavit itself. *See Ventresca v. United States, supra.*

We also disagree with the district court's conclusion that the information set forth in the affidavit was stale. The affidavit was executed and filed with the court on April 30, 1981, and the search warrant was issued on the same day. The affidavit alleged a series of suspected drug transactions between April 1 and April 25, 1981, the most recent of which occurred no later than April 23, 1981. Given the statements in the affidavit about suspected drug activity at the defendants' residence for a period of several weeks prior to the issuance of the warrant, it is reasonable to infer that such activity was of a continuous nature. We do not believe that the lapse of seven days between April 23—the day of the affiant's last specific observation of suspected drug activity—and April 30—the day on which the warrant was issued—invalidates the affidavit as stale. Rather, the affidavit, when considered as a whole, justifies the conclusion that illegal drugs probably were present in the defendants' residence when the warrant was issued. *See, e.g., People v. Schmidt, supra.*

Finally, we reject the district court's conclusion that the affidavit "coupled speculation with the association of drug users as a substitute for facts and knowledge of wrongdoing or the existence of evidence or contraband at the premises." The affidavit, in addition to describing the high volume of vehicular traffic and apparent purchases taking place at the defendants' residence during the period of surveillance, recited the following observations of the affiant: an entry into the residence on April 21, 1981, by a person who, upon returning to his vehicle, brought a small device to his nose and appeared to be sampling cocaine; and an entry into the yard of the premises on April 23, 1981, by three persons who appeared to be sharing a marijuana cigarette as they left the premises. These statements, far from being speculation, described visual observations of specific activities occurring at the defendants' residence. The mere possibility that an inexperienced observer might not equate these activities with criminal conduct does not diminish their significance to an experienced drug enforcement officer, such as the affiant. *See, e.g., Wimberly v. Superior*

---

**4.** While the reliability of information based upon observations of an identified citizen-witness or a law enforcement officer need not be independently established in the affidavit, the issue whether this information establishes probable cause must be determined on the basis of the quantity and character of its contents.

*Court,* 16 Cal.3d 557, 128 Cal.Rptr. 641, 547 P.2d 417 (1976) (officer trained in drug enforcement could reasonably believe seeds observed on floor of automobile next to pipe were marijuana); *Peterkin v. United States,* 281 A.2d 567 (D.C.App.1971) (officer's observation of a street exchange of cash for an object from a vial created probable cause for arrest); *People v. Quinones,* 38 App.Div.2d 1009, 330 N.Y.S.2d 1002, *aff'd* 33 N.Y.2d 811, 305 N.E.2d 916, 350 N.Y.S.2d 907 (1973) (arrest upheld where officer, trained in narcotics investigation, observed defendant give glassine envelopes to an intermediary who approached a group of men on the street, conferred with the defendant, and then delivered the envelopes); *State v. Durrell,* 111 R.I. 582, 305 A.2d 104 (1973) (officer's observation of brass pipe, which he knew from experience was frequently used for smoking marijuana, provided probable cause for arrest). The core of the affidavit, when read in a common sense manner, measures up to the constitutional standard of probable cause and the warrant for the search of the defendants' residence was properly issued.

The ruling is reversed.