The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Daryl Lester COOK, Defendant-Appellant.

No. 81CA0049.

Colorado Court of Appeals, Div. I.

March 24, 1983.

Rehearing Denied April 21, 1983.

Stuart A. Van Meveren, Dist. Atty., Stephen J. Roy, Deputy Dist. Atty., Loren B. Schall, Asst. Dist. Atty., Fort Collins, for plaintiff-appellee.

Allen, Foreman & Mueller, Mary G. Allen, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Daryl Lester Cook, appeals his conviction for several drug related offenses, arguing a statement made to the police and certain other evidence should have been suppressed. We agree that his statement should have been suppressed and therefore reverse the conviction and remand the cause for a new trial.

Cook was convicted by a jury of possession of a narcotic drug for sale, conspiracy to possess such drug for sale, and possession of a dangerous drug with intent to dispense. The following events led to his arrest and conviction.

The Loveland Police Department arrested John Chapman for driving under the influence. While he was being booked, a small amount of cocaine fell from his sock. The police officer agreed not to file charges if Chapman revealed his source and arranged

a purchase by an undercover policeman. Chapman named Stanley Jensen as his source, gave his address, and informed the police that Jensen drove a pick-up truck and had sold him cocaine on several occasions.

The police verified that utilities at that address were listed to Jensen and observed a pick-up truck in the driveway. At that time they did not place the house under surveillance.

A few days later, Chapman told an officer that cocaine would be delivered to Jensen's residence that day. The police department then set up surveillance of the residence.

During the morning the officers observed a woman leave in a car and return. At approximately 1:00 p.m. they observed a red pick-up truck arrive at the house. A person got out, went inside for a brief period, returned to the truck, and drove away. One police officer followed the truck while another called Chapman to ask whether the cocaine had been delivered. Chapman called Jensen, who told him that it had not been delivered. This information was relayed to the officer who was following the truck, whereupon he returned to his surveillance post at Jensen's residence.

There was no other traffic at the house until the same truck returned at approximately 3:45 p.m. Two people, later identified as Gary Hard and Cook, got out of the truck, went into the house, returned to the truck, and drove away. The truck was followed a second time. It stopped on a country road, and the officer observed the two occupants get out and walk away. In the meantime, Chapman called Jensen and then contacted the police to say that the cocaine had been delivered. An officer then arrested the two occupants. The truck was sealed and impounded, and Hard and Cook were taken to the police station.

Shortly after the truck was driven from Jensen's house, an undercover agent and Chapman arrived to make the previously arranged purchase. As the transfer was being made, Jensen was arrested. The police searched the house and found additional cocaine. Jensen stated that Cook and Hard had delivered the narcotics for him to sell.

Hard was then questioned. He waived his *Miranda* rights, and explained that he and Cook delivered the cocaine and that there was additional cocaine and two and one-half pounds of marijuana in a locked tool box in the truck which belonged to Cook.

This information, together with a description of the surveillance activities, was included in an affidavit for a search warrant for the truck. The warrant issued and the cocaine and marijuana were found where Hard had stated it would be.

After executing the search warrant, at approximately 1:00 a.m., Cook was advised of his *Miranda* rights. Cook indicated that he understood his rights and wanted to waive them, and he thereupon signed a written waiver. Wagner then said: "Do you want to tell us about the tool box?" Cook's response was: "Oh, I guess I am going to need an attorney." The officer agreed with him but then asked for his story. Cook made a statement, acknowledging ownership of the tool box, and that he intended to sell the cocaine and marijuana.

Cook moved to suppress the cocaine and marijuana as fruits of an illegal arrest, and to suppress his statement for violation of his *Miranda* rights. After a hearing, the trial court found that the information given by Chapman, whose identity was not revealed to the defense, and confirmation of that information gave the police probable cause to arrest Cook. The court also found that Cook's statement was not a request for counsel, and denied both motions to suppress.

### I.

We first address the issue of whether the police had probable cause to arrest Cook. We hold that they did.

▮ Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to sup-

port a reasonable belief that a crime has been committed by the person arrested. *People v. Quintero,* 657 P.2d 948 (Colo.1983). Probable cause may be established by hearsay. *People v. Henry,* 631 P.2d 1122 (Colo. 1981). But, where the information originates from an anonymous informer, the information supplied must contain sufficient facts to establish the basis for his knowledge of criminal activity and also must establish adequate circumstances to justify the officer's belief in the informer's credibility or the reliability of the information. *People v. Henry, supra.*

■ The first element of the test, establishing the basis for the informant's knowledge, may be satisfied when the information is provided as a result of personal observation by the informant. *People v. Stoppel,* 637 P.2d 384 (Colo.1981). Chapman's personal knowledge, based on his own transactions with Jensen, was sufficient to support the validity of his information that narcotics would be delivered to Jensen's residence, even though he had no knowledge as to who was Jensen's supplier.

■ The second element of the test, the reliability of the information and credibility of the informant, may be established by a declaration against penal interest, even if the informant is granted immunity from prosecution. *People v. Stoppel, supra.* Thus, the police could reasonably rely on Chapman's information as to what was to occur on the date in question.

We must, then, determine whether the observations of the police while at Jensen's house, when considered with the information from the anonymous informer, established probable cause to arrest Cook.

■ Information gained by the observations of a police officer may be presumed to be credible and reliable. *People v. Ball,* 639 P.2d 1078 (Colo.1982). The information available to the police must be viewed in a common sense and realistic fashion, and technical requirements of elaborate specificity should not be imposed. *People v. Ball, supra.* Also, due consideration should be given to a law enforcement officer's experience and training in considering the signifi-

cance of his observations in the context of probable cause. *People v. Ball, supra.* Here, although the amount of traffic to and from the house or the degree of specificity in the trip did not rise to the level in *Ball, supra,* or *People v. Macias,* 44 Colo.App. 203, 616 P.2d 150 (1980), the telephone call from Chapman immediately following the departure of the red truck leads to the inference that the information received from Chapman was a reliable basis on which to arrest Cook.

The arrest being supported by probable cause, evidence obtained as a result of that stop was admissible.

## II.

Turning now to the question of whether Cook's statement was obtained in violation of his *Miranda* rights, we hold that police questioning should have immediately ceased when Cook expressed a need to consult an attorney.

■ Neither a "sophisticated" request, nor a "legally proper form" is necessary to invoke the right to counsel. *People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (1980). *See also People v. Fish,* 660 P.2d 505 (Colo.1983). And, once the accused has requested counsel, the questioning must cease immediately and the accused must be given a reasonable opportunity to contact his attorney. *People v. Traubert, supra.* In addition, when the defendant has requested that he be given a chance to speak with an attorney, there is a heavier burden on the prosecution to show waiver of that right than in the absence of such a request. *People v. Traubert, supra; People v. Harris,* 191 Colo. 234, 552 P.2d 10 (1976).

■ In *People v. Cerezo,* 635 P.2d 197 (Colo.1981), when the accused remarked, "I think I better have a lawyer," the court held that this was a clear assertion of her right to counsel. Cook's statement here that, "Oh, I guess I am going to need an attorney," was not significantly different from the statement in *Cerezo.* The fact that the police secured a written waiver from Cook prior to questioning him does not eliminate the issue. *See People v. Traubert, supra.* Therefore, continued question-

ing violated Cook's right to counsel and his statement should have been suppressed.

We disagree with the prosecution's argument that any error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979). Cook's statement acknowledged that he owned the tool box and its contents, and that he possessed the contraband with intent to sell it to others. The other evidence consisted of his co-defendant's self-serving statement that Cook owned the tool box, and Jensen's testimony that Cook was present during the transaction but did not speak. This is not evidence so overwhelmingly probative of guilt that it rendered harmless the admission of Cook's statement in violation of his constitutional rights.

### III.

Cook's assertion that the evidence was insufficient to prove the elements of the offense is without merit. The other contentions of error are not addressed because it is unlikely they will arise again on retrial.

The judgment is reversed and the cause is remanded for new trial.

COYTE and BERMAN, JJ., concur.