The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Herb FOX, a/k/a Herb Richards, Defendant-Appellant.

No. 82CA0824.

Colorado Court of Appeals, Div. I.

June 14, 1984.

Rehearing Denied Aug. 2, 1984.

Certiorari Denied Nov. 26, 1984.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dixon & Snow, Frank Martinez, Rod W. Snow, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant, Herbert Daniel Fox, appeals the judgment of conviction entered by the trial court for possession of narcotic drugs for sale.

He asserts that the trial court entered erroneous findings and conclusions on his motion to suppress evidence and statements. We affirm.

## I.

### The Search and Seizure

■ At approximately 3:00 A.M. on the date of the search, a police officer obtained a valid warrant for a search of Fox's residence. That warrant did not expressly authorize a "no knock" search of the residence. Six police officers and one detective from the organized crime strike force executed the search warrant at approximately 5:00 A.M. The officers had planned to carry out a "no knock" entry into the residence by using two sledgehammers.

At the hearing on Fox's motion to suppress, the trial court denied the motion and found:

"The police sought entrance into defendant's quarters by assaulting, with sledge hammers, the outside door on the ground floor [of] the three story residence. When the door did not yield and an occupant of the house shouted an inquiry as to what was going on, the officers ceased striking the door, identified themselves as police officers with a search warrant for the premises, and demanded admission. When this was not forthcoming, one of the officers broke an adjacent window and reached into the house and unlatched the door, thus gaining entrance to the premises."

Fox argues that the police officers' unsuccessful attempt to force entry with neither express authority nor notice renders the subsequent search and seizure invalid under *People v. Lujan,* 174 Colo. 554, 484 P.2d 1238 (1971). We do not agree.

Fox correctly states that the principles of law announced in *Lujan* govern a "no knock" search or forced entry of a residence. Those principles, however, do not apply to "attempted" forced entries. *See People v. Campbell,* 185 Colo. 312, 524 P.2d 73 (1974).

Here, there was no intrusion until after the police identified themselves, indicated they had a search warrant, and demanded entry. Therefore, the fact that the warrant did not specifically authorize a "no knock" entry becomes irrelevant because the actual entry was carried out as any proper entry with a warrant would be. Therefore, the trial court's denial of Fox's motion to suppress evidence was correct.

## II.

Fox next contends the trial court erred when it refused to suppress inculpatory statements which he made after invoking his right to counsel.

The trial court found that after Fox was arrested the detective immediately read him his *Miranda* rights. Following this advisement Fox did not request an attorney, and remained silent.

Approximately 45 minutes to one hour later, the detective readvised Fox of his *Miranda* rights, and informed him that the officers had located a safe in the residence. The detective told Fox that because the search warrant authorized a search of the safe, the police would forcibly enter the safe if necessary, but that the search would be more easily made if Fox provided police the safe combination. At this time, Fox stated: "All of my money is in the safe."

Immediately after making this statement, the detective told Fox he could be

present and observe the police count the money taken from the safe. At this time, Fox made his second statement saying that he did not know what to do, and that he wanted to speak to an attorney. The detective then indicated to Fox that he had no further reason to talk to him, and started to go to the downstairs portion of the residence where the safe was located. At this point, however, Fox called the detective back, and stated that he would give the police the combination to the safe, but that it would be easier if he opened the safe for them.

After Fox opened the safe, and during the inventory of its contents, the detective advised Fox of his *Miranda* rights for the third time. Fox then asked what was going to happen to his female companion. The detective responded that the woman would be jailed. The trial court found that in response Fox replied, "Why? Everything in there is mine." The officer then asked Fox, "You mean the cocaine and the money are yours?" Fox then answered, "Yes. The cocaine and the money are all mine."

The trial court found that Fox's statements that he did not know what to do and that he wanted a lawyer were "neither inculpatory nor incriminating, and that except for laying out the totality of the circumstances, are not relevant to the issues." Concerning the remaining three statements, the trial court found these to be "admissions by Fox that the safe and the contents were his."

As to the first statement, "All my money is in the safe," the trial court found that Fox uttered this statement after two advisements of his rights, and that it was not the result of any interrogation.

Concerning the statements Fox made relative to the opening of the safe, the trial court found these statements to be "a voluntary choice ... made to protect [his] property from lawful, forcible entry"; that although such an act is likely to elicit an incriminating response from a defendant, a defendant may not, at such a stage of a search, volunteer to cooperate and later

claim the evidence gained is inadmissible, especially when the contents of the container were available to the law enforcement officers in accord with a lawful search warrant.

Finally, as to the last statements concerning the fate of his female companion, the trial court found that Fox made these statements in a voluntary attempt to free his friend. The trial court then found:

"The defendant was not being interrogated, in fact, he was doing the interrogation at the time and voluntarily waived his right to advice of counsel prior to making any such statements. However noble the defendant's alleged purpose may have been, he was surely aware of the fact that when he took responsibility for the contents of the safe that he was making incriminating statements which he did not have to make and for which he was not being interrogated at that time."

■ Any statement made by a defendant after he requests an attorney will be deemed inadmissible unless a trial court determines: (1) that the statements made were voluntary; and (2) that the statements themselves denote an intent to waive the right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ Whether statements were voluntarily made is determined by the totality of the circumstances, including the occurrences and events surrounding a confession or statement, and the mental condition of the person making the statement. *People v. Raffaelli*, 647 P.2d 230 (Colo.1982). When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right can be established, where, as here, the accused initiates further conversations with the police, and in so doing, makes additional statements, even after the police have ceased questioning him. *Oregon v. Bradshaw, supra; Edwards v. Arizona, supra; People v. Cook*, 665 P.2d 640 (Colo.App. 1983).

Here, because the trial court correctly applied these tests to its findings of fact, we find no reversible error in its refusal to suppress defendant's statements.

The judgment of conviction is affirmed.

ENOCH, C.J., and VAN CISE, J., concur.