No. 25441

**The People of the State of Colorado v. Jerry Daniel Valdez**
(511 P.2d 472)

Decided June 18, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Jack E. Hanthorn, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Allan I. Lipson, Deputy, for defendant-appellants.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was convicted of possession of narcotic drugs (marijuana), less than 1/2 ounce. We reverse.

A Westminster police officer saw the defendant enter a drive-in theatre by climbing over a fence and thereafter enter an automobile parked inside the theatre. The officer approached the car and asked to see the defendant's admission ticket. When the defendant was unable to produce the ticket, the officer asked him for some identification and the defendant produced his driver's license.

The officer noticed that the defendant had turned himself in the car seat so that his back was toward the officer; that he was reaching into the left breast pocket of his shirt; and that he appeared to be reaching underneath the front seat of his car. At this time, the officer asked the defendant to get out of the car and informed the defendant that he was under arrest for violation of a Westminster ordinance which prohibited the entering of a theatre without paying an admission fee.

The officer then asked the defendant "what was so important that he felt it necessary to hide what he was doing in his left breast pocket . . . ." When the defendant failed to answer, the officer shined a flashlight into the pocket. He observed some matches, a piece of gum, a cigarette butt from a rolled cigarette and several flakes which appeared to have a greenish tinge. The officer then reached into the pocket, removed and inspected the items, and concluded that the flakes were probably marijuana.

The officer testified that the defendant's pocket was only 3-4 inches deep, that he did not suspect it contained a

weapon, and that he looked into the pocket because the defendant's actions "raised my suspicions as to what might be going on." The defendant's motion to suppress the admission into evidence of the flakes of marijuana and the rolled cigarette paper was denied. The sole issue raised on this appeal is whether the defendant's motion should have been granted.

The People do not — and cannot properly — argue that the items in the defendant's pocket were in "plain view" or that they were validly seized pursuant to a "frisk" of the defendant for assaultive weapons. It is the People's position that once the defendant was arrested for entering the theatre without paying the price of admission, he thereafter lost any protection afforded by the Fourth and Fourteenth Amendments to the United States Constitution against unreasonable searches and seizures. In other words, the People argue that there are no constitutional limits to the scope of a search incident to an arrest. We disagree.

"A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide." *People v. Watkins,* 19 Ill. 2d 11, 166 N.E.2d 433 (1960).

In *Cowdin v. People,* 176 Colo. 466, 491 P.2d 569 (1972), the defendant was arrested by a police officer for reckless driving. A search of the defendant's automobile uncovered a pouch of hashish. We reversed the defendant's conviction for possession of the hashish, holding that a violation of a traffic regulation does not justify a general, exploratory search for evidence of other criminal activity where no independent circumstances gave probable cause for the unrelated search. *See In re People, Int. of B.M.C.,* 32 Colo. App. 79, 506 P.2d 409 (1973). The court in *Cowdin v. People, supra,* stated that neither a "furtive gesture" on the part of the defendant nor personal knowledge on the part of one of the arresting

officers that the defendant had a prior arrest record for possession of marijuana gave rise to probable cause for the search of the automobile.

■ Although *Cowdin* related to the search of an automobile incident to the defendant's arrest, the same rule should apply to a search of the arrestee's person. Thus, in this case, the officer's search is invalid as incident to the defendant's arrest for entering a theatre without paying the admission fee, since the defendant's "furtive gestures" did not give rise to probable cause to search him for evidence of an offense unrelated to that for which he was arrested.

■ In *Cowdin,* the court indicated that in a search conducted incident to an arrest, the arresting officers do have authority to search for instrumentalities or evidence of the specific crime for which they had probable cause to arrest. *See In re People, Int. of B.M.C., supra.* When, however, persons are arrested for minor traffic violations or minor municipal offenses such as the one here, the instrumentalities or evidence of such crimes are minimal or non-existent. Thus the scope of a search incident to such an arrest would be quite limited.

■ The People argue that it is inconsistent to allow thorough inventory searches of an accused once inside the police station and to deny a thorough search prior to arrival at the place of detention. It is the law in this state, however, that an inventory search is an incident of lawful *incarceration. People v. Overlee,* 174 Colo. 202, 483 P.2d 222 (1971). Considering the nature of municipal offenses, it is not unreasonable to assume that many persons charged with a minor municipal offense will not be incarcerated.

■ We point out again that the evidence seized in this case was *not* discovered in plain view, by a "frisk" of the defendant for assaultive weapons, by a search of the defendant for instrumentalities or evidence of the offense for which he was arrested, by an inventory search, or by a search for evidence or instrumentalities of an offense for which there existed probable cause. Rather, the evidence was seized during a general exploratory search for which no probable cause existed.

The judgment is reversed and the cause remanded with directions to grant the defendant's motion to suppress evidence and his motion for a new trial.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON do not participate.