Clayton M. BARNETT, Appellant,

v.

UNITED STATES, Appellee.

No. 85–610.

District of Columbia Court of Appeals.

Argued March 24, 1987.
Decided April 29, 1987.

Richard S. Greenlee, Public Defender Service, with whom James Klein and Jennifer P. Lyman, Public Defender Service, were on the brief, for appellant.

Saul M. Pilchen, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Judith Hetherton, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and PAIR, Senior Judge.

PAIR, Senior Judge:

By an information filed on October 5, 1984, appellant was charged with one count each of possession of phencyclidine and marijuana, D.C.Code § 33–541(d) (1986 Supp.). Appellant moved, on October 25, 1984, to suppress the drugs, claiming they were seized in violation of his constitutional rights. After a hearing on November 29, 1984, the motion to suppress was denied.

Following a trial at which the facts were stipulated, appellant was found guilty as charged and sentenced to 180 days' incarceration on each count. However, the sentences were suspended in favor of two years of supervised probation. This appeal challenges the legality of appellant's arrest for a noncriminal traffic violation and the subsequent search and seizure of narcotics. After a careful review of the record, viewed in the light most favorable to the government, we conclude that the trial court erred in denying appellant's motion to suppress.

The undisputed facts developed at the suppression hearing at which Officer David Willis, a twelve-year veteran of the Metropolitan Police Department was the sole witness, disclosed that at approximately 2:00 a.m. on October 5, 1984, he was on duty as an undercover narcotics investigator with his partner, Officer Moynihan, in the 1900 block of 9th Street, N.W., a high drug area. Willis observed appellant walk from the middle of the street to the curb where he knelt down and appeared to speak to a cat. Appellant walked once again into the middle of the street and yelled, "I am Clayton. I am black." The officers approached appellant, identified themselves as police officers, and asked that he return to the curb. Appellant did not resist but complied peacefully. Officer Willis then asked appellant for some identification, which he was unable to produce,[1] and advised him that he was violating the pedestrian traffic regulation that prohibits "walking as to create a hazard."[2] Officer Willis placed him under arrest for the traffic violation and conducted a search incidental to the arrest.[3] The search revealed a plastic bag containing a greenish weed and a tin foil containing a greenish weed that emitted the chemical odor of PCP. Appellant was then placed under arrest for possession of narcotics and transported to the precinct. At the station appellant signed the citation for "walking as to create a hazard" and was arraigned on the drug charges later the same day.

After considering Officer Willis' testimony and the arguments of counsel presented at the suppression hearing, the trial court ruled that appellant had been lawfully arrested for a misdemeanor committed in Willis' presence[4] and that the search was a proper one, incidental to the arrest. Thus, appellant's suppression motion was denied.

■ Appellant submits that the full custody arrest and contemporaneous search violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Appellant does concede that Officer Willis had probable cause to believe that appellant had committed the offense of "walking as to create a hazard," in the officer's presence.[5] It appeared reason-

---

1. At the suppression hearing, when counsel inquired on cross-examination whether Willis had asked appellant for his name before arresting him, Willis testified that he "believe[d]" he had, but could not recall whether appellant had told him his name. The following colloquy then ensued:

   DEFENSE COUNSEL: So, you are not sure whether [appellant] failed to identify himself or not, are you?
   WILLIS: No, he didn't identify himself completely to my satisfaction, no.
   DEFENSE COUNSEL: Well, is it a fact that you don't remember whether he gave you his name or not?
   WILLIS: That is a fact.
   DEFENSE COUNSEL: So, he could very well have identified himself?
   WILLIS: He very well could have.
   DEFENSE COUNSEL: The problem is he didn't give you any paper identification? Isn't that a fact?
   WILLIS: That is correct.
   DEFENSE COUNSEL: Is it a police regulation that someone has to give paper identification before you are satisfied?
   WILLIS: No ma'am.

2. On cross-examination Officer Willis admitted that he was unaware that the pedestrian traffic violation of "walking as to create a hazard" is no longer a criminal infraction.

3. Officer Willis testified that appellant was arrested for "walking as to create a hazard," and further, that the search was conducted incidental to appellant's arrest for the traffic violation, as "the regulation states anybody that is arrested shall be searched."

4. Although the court did not specifically indicate what misdemeanor had been committed in the officer's presence, it appears that the court based its conclusions on the finding that Officer Willis arrested appellant for refusing to give his true name, and not for the traffic violation, as Officer Willis testified.

5. This civil infraction is proscribed by 18 DCRR § 2303.2 (1981), which provides:

   No pedestrian shall suddenly leave a curb, safety platform, safety zone, loading platform, or other designated place of safety and walk or turn into the path of a vehicle which is so close that it is impossible for the driver to yield.

   In accordance with the Traffic Adjudication Act of 1978, codified at D.C.Code § 40–601 et seq. (1981), the decriminalized infraction is handled administratively by the Bureau of Traffic Adjudication. Violation of 18 DCRR § 2303.2 is sanctioned by a monetary fine per D.C.Code § 40–605 (1981).

   Although not raised by either party in this appeal, it has not escaped our attention that the

able, therefore, for Willis to stop appellant, discover his name, and issue a ticket for the civil infraction. However, appellant contends, and we agree, that it was not reasonable, within the strictures of the Fourth Amendment, for Willis to effect a full custody arrest accompanied by a body search. The only justification for the arrest and resulting search would have been if appellant had refused to disclose his name and address to Officer Willis.[6] The undisputed facts, as developed at the suppression hearing, do not support any such conclusion.

■ When, as here, the authority for the search depends solely upon the legality of the arrest, if the arrest was unlawful, then, as a matter of law, the search is constitu-

tionally prohibited.[7] Our threshold inquiry, then, is whether appellant's arrest was lawful.

■ The undisputed testimony of Officer Willis leaves no doubt that appellant was arrested for violating a pedestrian traffic regulation which is a civil infraction for which only a monetary sanction may be imposed. Consequently, the arrest was invalid.[8] Finding the arrest to be unlawful, it necessarily follows that the contemporaneous search and seizure that produced the narcotics violated appellant's Fourth Amendment rights. Thus, the drugs should have been suppressed as fruits of an illegal arrest. *See Curtis v. United States*, 222 A.2d 840, 842 (D.C.1966).

Metropolitan Police Department's General Orders pertaining to Traffic Enforcement, § 303.-1(G)(1), provides that *uniformed members* shall enforce the traffic laws and regulations pertaining to pedestrians. Officer Willis and Officer Moynihan were *not* in uniform at the time of appellant's arrest.

6. D.C.Code §§ 40–627 and 40–612(20) (1981) make it a criminal offense for a pedestrian to commit a civil infraction *and* at the same time refuse to provide an officer with his true name and address to facilitate issuance of a traffic ticket. Specifically, § 40–627 provides:

§ 40–627. Identification of pedestrian offenders.

(a) A pedestrian who is stopped by a police officer or other authorized official after the pedestrian has committed an infraction of these regulations shall be required to inform the officer or other official of his true name and address for the purpose of including that information on a notice of infraction: Provided, that no pedestrian shall be required to possess or display any documentary proof of his or her true name or address in order to comply with the requirements of this section.

(b) A pedestrian who refuses to provide his or her name and address to a police officer upon request after having been stopped for committing an infraction of these regulations shall, upon conviction, be fined no less than $10 nor more than $50.

Under D.C.Code § 40–612(20), violations of § 40–627(b) shall continue to be prosecuted as criminal offenses. Since a violation of § 40–627(b) is a criminal misdemeanor prosecuted in Superior Court, a police officer may arrest a violator if he has probable cause to believe that the suspect is committing the offense in his presence. D.C.Code § 23–581(a)(1)(B) (1981). This authorization is reflected in General Order § 303.1(G)(2), which provides that summary arrests for violations of the pedestrian control

regulations shall be made only when the violator refuses to properly identify himself. Section 303.2(F)(1) provides that traffic arrests may only be made for those offenses falling under the jurisdiction of Superior Court or as enumerated in item (I)(A)(2). Section 303.-2(I)(A)(2)(u)(1) provides that a pedestrian who refuses to provide his or her name and address to a police officer, upon request, after having been stopped for committing an infraction shall be detained or if necessary arrested, until reasonable proof is given of the violator's name and address.

7. *See Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (for the purposes of the Fourth Amendment a warrantless search may be proper if incidental to a *lawful* arrest); *Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914) (the government has the right to search the accused for the fruits or evidences of crime when he is *legally* arrested); *Culp v. United States*, 486 A.2d 1174, 1177 (D.C.1985) (the right to search naturally follows from a *lawful, valid* arrest); *Curtis v. United States*, 222 A.2d 840, 842 (D.C.1966) (a search and seizure without a warrant may be made only incident to a *lawful* arrest).

8. Even if we were to conclude, as the trial court apparently did, that appellant was arrested for refusing to give his true name as required by § 40–627, we could not conclude that the arrest was valid. The record established at the hearing contains no evidence whatsoever that appellant *refused* to reveal his true name. Other than his inability to produce written proof of his identity, there is nothing to suggest he was uncooperative, protested the intrusion, or suggested he would not pay the ticket. Absent a *refusal* to divulge his name, appellant could not be lawfully arrested for violating § 40–627.

We are not persuaded by the government's argument that the case be remanded for a further hearing on the motion to suppress to determine whether Officer Willis had probable cause to believe appellant had violated § 40–627. We decline to remand for a rehearing on the motion for two reasons.

■ First, according to Officer Willis' testimony, there was no evidence that appellant had refused to identify himself, as required for a valid arrest under § 40–627. Officer Willis could not recall whether appellant orally identified himself. He did remember clearly that appellant had no document to prove his identity, but the statute makes it clear that a pedestrian need not carry proof of his identification.

Secondly, the government failed to meet its burden of proof in its attempt to justify appellant's warrantless arrest. We have held that in the case of a claimed Fourth Amendment violation, absent a warrant, the burden is on the government to go forward with evidence that will bring the case within one or more exceptions to the exclusionary rule so as to vindicate the challenged police misconduct. *See Duddles v. United States,* 399 A.2d 59, 63 n. 9 (D.C.1979); *Malcolm v. United States,* 332 A.2d 917, 918 (D.C.1975). We are not persuaded that the government should have a second chance to elicit facts supporting an affirmance of the trial court's ruling as the record indicates that it had a full and fair opportunity to present whatever facts it chose to meet its burden of justifying the warrantless arrest and resulting search and seizure.

In sum, this is a case involving an unconstitutional search and seizure that cannot be tolerated. Having determined that the arrest was illegal, we hold the search of appellant and the seizure of the narcotics was likewise unlawful, and that all evidence concerning the drugs was inadmissible and should have been suppressed.

*Reversed.*