The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Henry L. BLAND, Defendant–Appellee.

No. 94SA63.

Supreme Court of Colorado, En Banc.

Nov. 7, 1994.

Opinion 87.

A. William Ritter, Jr., Dist. Atty., Everett Engstrom, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Angela Kruse, Deputy State Public Defender, Denver, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

The prosecution brings this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1994 Supp.), to challenge an order of the Denver District Court suppressing a packet of cocaine discovered during a search of the person of the defendant, Henry L. Bland, after he had been detained for possession of one ounce or less of marihuana. We hold that although subsection 18–18–406(2), 8B C.R.S. (1994 Supp.), requires an officer to issue a written notice or summons to a person possessing one ounce or less of marihuana and does not permit a custodial arrest and a full search of the person incident to such an arrest, the search at issue here was constitutionally permissible. Therefore, we reverse and remand the case to the district court for further proceedings consistent with this opinion.

## I. Factual Background [1]

A security guard at a Motel 6 located in Denver, Colorado, testified that on September 25, 1993, he observed a number of people entering and leaving room 306. Suspecting possible drug trafficking, the security guard reported this activity to the police. Thereafter, members of the Denver Police Department narcotics unit went to the motel and conducted a surveillance of room 306. The officers observed the room for approximately thirty minutes and, during that time, saw people entering, staying for a short time, and then leaving the room.

Officer Bolte testified that during the surveillance, he saw the defendant leave room 306 and go to the fourth floor of the motel. Officer Bolte followed, saw the defendant through a motel room window, and radioed the other officers to alert them that the defendant was in room 427. The defendant opened the door to room 427 and saw Officer Bolte talking on his radio. Officer Bolte testified that he identified himself as a police officer, displayed his badge, and asked the defendant if he could talk with him. As the district court found, the defendant then invited the officer into the room.

After entering the defendant's room, Officer Bolte asked him for identification and "who he knew or what he was doing in Room 306." The defendant said that his sister occupied room 306. Officer Bolte then asked him whether he had any weapons or narcotics in his room. The defendant responded by directing the officer's attention to two cigars that were on the table and stating: "Just that marijuana there." Upon breaking open one of the cigars, Officer Bolte determined that the cigar wrapping contained marihuana. The total amount of marihuana discovered was not more than one ounce.

At that point a second officer arrived at room 427. Shortly thereafter, the two officers observed a handgun in plain view on the floor under a chair near where they were standing. The officers retrieved the handgun and handcuffed the defendant. The officers then searched him and discovered a baggy in his groin area. According to Officer Bolte, "I pulled open [the defendant's] pants—or sweatpants type of thing—jogging suit—and I observed a plastic baggy in his genital area containing what I believed to be crack cocaine."

The defendant was subsequently charged with the possession of cocaine,[2] and as a special offender for having used, displayed, possessed, or had available for use a deadly weapon.[3] Following a preliminary hearing, the case was bound over for trial. Thereafter, the defendant moved to suppress the cocaine, arguing that section 18–18–406, 8B C.R.S. (1994 Supp.), requires an officer to issue a notice or summons to a person possessing one ounce or less of marihuana, but does not allow an officer to arrest a person for such an offense. The defendant argued, therefore, that the search of his person could

---

1. The factual background was developed through testimony at the February 11, 1994, suppression hearing, and appears in abbreviated form in the oral findings of the district court.

2. § 18–18–405, 8B C.R.S. (1993 Supp.).

3. § 18–18–407(1)(f), 8B C.R.S. (1993 Supp.).

not be justified as a search incident to a lawful arrest. He also argued that the search constituted an illegal strip search. The defendant contended that the search and the subsequent seizure of the cocaine violated both the United States Constitution and the Colorado Constitution.[4]

The trial court granted the defendant's motion to suppress the cocaine, agreeing with him that Officer Bolte did not have authority to arrest him under section 18–18–406. Relying primarily on *People v. Clyne*, 189 Colo. 412, 541 P.2d 71 (1975), the trial court held that the search was illegal and the cocaine was not properly seized because under subsection 18–18–406(2) the officer could only restrain the defendant temporarily and issue a notice or summons for violating subsection 18–18–406(1).

## II. Subsection 18–18–406(2)

Subsection (1) of section 18–18–406, 8B C.R.S. (1994 Supp.), classifies possession of not more than one ounce of marihuana as a class 2 petty offense punishable by a fine of not more than one hundred dollars. Subsection (2) of the statute prescribes the procedures to be followed by a police officer in initiating proceedings for violation of subsection (1):

(2) Whenever a person is arrested or detained for a violation of subsection (1) of this section, the arresting or detaining officer shall prepare a written notice or summons for such person to appear in court. The written notice or summons shall contain the name and address of such arrested or detained person, the date, time, and place where such person shall appear, and a place for the signature of such person indicating the person's written promise to appear on the date and at the time and place indicated on the notice or summons. One copy of said notice or summons shall be given to the person arrested or detained, one copy shall be sent to the court where the arrested or detained person is to appear, and such other copies as may be required by the law enforcement agency employing the arresting or detaining officer shall be sent to the places designated by such law enforcement agency. The date specified in the notice or summons to appear shall be at least five days after such arrest or detention unless the person arrested or detained demands an earlier hearing. The place specified in the notice or summons to appear shall be before a judge having jurisdiction of such class 2 petty offense within the county in which the class 2 petty offense charged is alleged to have been committed. The arrested or detained person, in order to secure release from arrest or detention, shall promise in writing to appear in court by signing the notice or summons prepared by the arresting or detaining officer. Any person who does not honor such written promise to appear commits a class 3 misdemeanor.

§ 18–18–406(2), 8B C.R.S. (1994 Supp.).

An apparent anomaly arises from the fact that the statute provides that a person may be *arrested* or detained for the possession of one ounce or less of marihuana and also provides that the arresting or detaining officer "shall" prepare a written notice or summons and that the suspect is to be released upon signing a promise to appear. The defendant argues that the statute requires an officer to issue a summons[5] but does not allow an officer to effectuate an arrest. The prosecution counters that the statute confers discretion upon an officer either to arrest an individual or to issue a summons. We disagree with both contentions and hold that the statute requires the officer to issue a summons and thus prohibits custodial arrests but does not prohibit non-custodial arrests and

4. Specifically, in his motion to suppress filed November 22, 1993, the defendant argued, "all statements and evidence and all fruits of such statements and evidence, taken and sized [sic] by Denver Police officers relating to the crime charged herein [must] be suppressed, pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article II, Sections 7, 16 and 25 of the Colorado Constitution; Sections 16–3–102, 103, C.R.S. and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)."

5. For brevity we sometimes use the term "summons" to describe the "written notice or summons" referred to in subsection 18–18–406(2).

lawful searches incident to such arrests.[6] If Officer Bolte made a proper non-custodial arrest and search incident to that non-custodial arrest, the cocaine was properly seized.

■ When we construe a statute, we seek to ascertain and give effect to the intent of the General Assembly. *E.g., Rowe v. People,* 856 P.2d 486, 489 (Colo.1993); *People v. Terry,* 791 P.2d 374, 376 (Colo.1990). To determine legislative intent, we first look to the language of the statute. *Terry,* 791 P.2d at 376. Subsection 18–18–406(2) expressly states that "the arresting or detaining officer shall prepare a written notice or summons for such person to appear in court." The word "shall" is presumed to be mandatory. *Centric–Jones Co. v. Hufnagel,* 848 P.2d 942, 947 (Colo.1993); *People v. Clark,* 654 P.2d 847, 848 (Colo.1982).[7] Additionally, subsection 18–18–406(2) sets out in detail the procedure for issuing the summons and prescribes its contents, thus supporting our conclusion that it was the intent of the General Assembly to require police officers to issue a summons under this subsection. Any possible doubt that issuance of a notice or summons is mandated, and that a custodial arrest is therefore not contemplated, is quickly dispelled by the further provision that "[t]he arrested or detained person, in order to secure release from arrest or detention, shall promise in writing to appear in court by signing the notice or summons prepared by the arresting or detaining officer." § 18–18–406(2).

Furthermore, in *People v. Clyne,* 189 Colo. 412, 414, 541 P.2d 71, 72 (1975), we noted that a modern policy has emerged favoring the issuance of citations and summonses over custodial arrests for minor offenses. *See also* II American Bar Association, *ABA Standards for Criminal Justice,* Standards 10–2.1 & 10–2.2 (2d ed. 1980 & 1986 Supp.); 2 Wayne R. LaFave, *Search and Seizure* § 5.1(h) (2d ed. 1987 & 1994 Supp.) (hereinafter cited as "LaFave"). The Colorado General Assembly has "given effect to this policy by requiring the issuance of a penalty assessment notice or summons in ordinary traffic violations." *Clyne,* 189 Colo. at 414, 541 P.2d at 72.

Because (i) subsection 18–18–406(2) states that the arresting or detaining officer *shall* prepare a written notice or summons; (ii) subsection 18–18–406(2) concerns the form, distribution, and effect of the notice or summons; and (iii) the General Assembly adopted the statute to implement a preference for the issuance of a summons over a custodial arrest for this type of violation, we hold that subsection 18–18–406(2) requires an officer to issue a summons to a person found possessing one ounce or less of marihuana. As a consequence, a person to whom such a summons is issued may obtain release by signing a written promise to appear in court.[8]

### III. Custodial vs. Non-custodial Arrests

#### A.

■ The word "arrest" may refer to either a "custodial arrest" or a "non-custodial arrest." A distinction may be drawn between custodial arrests, which are made for the purpose of taking a person to the stationhouse for booking procedures and the filing of criminal charges, and non-custodial arrests, which involve only temporary detention for the purpose of issuing a summons. The police may conduct a full search only when incident to a lawful *custodial* arrest. *See, e.g., United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427

---

**6.** A "custodial" arrest is made for the purpose of taking the arrestee to the stationhouse for booking procedures and in order to file criminal charges. A "non-custodial" arrest, however, involves a only temporary detention for the purpose of issuing a notice or summons to the arrestee. For a more detailed discussion see *infra,* Part III.

**7.** This interpretation is consistent with our decision in *People v. Meredith,* 763 P.2d 562, 564–65 (Colo.1988), in which we held that a statute stating that the arresting officer *may* offer to issue a penalty assessment notice in lieu of making a custodial arrest grants the officer discretion. *See also State v. Lamb,* 202 Ga.App. 69, 413 S.E.2d 511, 513 (1991) ("The statute mandates the procedure [by providing that the arresting officer 'shall' issue a citation] and precludes the discretion to effect a custodial arrest in lieu of a citation.").

**8.** The issue of whether an officer could make a custodial arrest upon the arrestee's refusal to sign the requisite written promise to appear in court is not before us.

(1973); *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973); *People v. Bischofberger*, 724 P.2d 660, 664–65 (Colo.1986); *see also* 2 Lafave § 5.1(a) at 395 (stating that the distinction in *Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), between custodial arrests and arrests followed by release at the scene is important in terms of the incidental search that is allowed).[9]

In *Robinson*, the defendant was stopped in his car for operating a motor vehicle after revocation of his operator's permit. *Robinson*, 414 U.S. at 220, 94 S.Ct. at 469–70. That offense carried a mandatory minimum jail term, a mandatory minimum fine, or both. *Id.* The police effected a "full custody arrest," which a testifying instructor for the police department defined as "one where an officer 'would arrest a subject and subsequently transport him to a police facility for booking.'" *Id.* at 221 n. 2, 94 S.Ct. at 470 n. 2. The arresting officer then conducted a search incident to arrest and found a crumpled cigarette package in the defendant's coat pocket. *Id.* at 221–23, 94 S.Ct. at 470–71. After opening the package, the officer found fourteen gelatin capsules of white powder which, upon later analysis, proved to be heroin. *Id.* at 223, 94 S.Ct. at 471. On appeal, the United States Supreme Court held that "in the case of a lawful *custodial* arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.* at 235, 94 S.Ct. at 477 (emphasis added). The court therefore upheld the trial court's ad-

mission of the heroin into evidence. *Id.* at 237, 94 S.Ct. at 477.[10]

In *Gustafson*, the defendant was placed under arrest for failure to have his vehicle operator's license in his possession. *Gustafson*, 414 U.S. at 262, 94 S.Ct. at 490. Thereafter, the police searched the defendant and discovered marihuana cigarettes in a cigarette box inside his coat pocket. *Id.* After discussing the principles arising from *Robinson* governing searches incident to *custodial* arrests, *id.* 414 U.S. at 263–266, 94 S.Ct. at 491–92, the Supreme Court upheld the admission of the cigarettes as the result of a search incident to a lawful *custodial* arrest. *Id.* at 266, 94 S.Ct. at 492.

Finally, in *Bischofberger*, this court reversed the suppression of certain evidence because the suppression was "based on an incorrect legal standard with respect to the scope of a search incident to a lawful *custodial* arrest." *Bischofberger*, 724 P.2d at 661 (emphasis added). The police, in *Bischofberger*, conducted a search incident to arrest after placing the defendant under arrest and handcuffing him. *Id.* The defendant was arrested based on outstanding warrants and the custodial arrest was therefore lawful. *Id.* at 661, 665. We emphasized the fact that "a search incident to a *lawful custodial arrest* is quite broad." *Id.* at 664 (emphasis in original).

*Robinson*, *Gustafson*, and *Bischofberger*, therefore, stand for the proposition that a full search incident to arrest is authorized when police effect a lawful custodial arrest.

---

**9.** Additionally, not all seizures of a person by a police officer constitute an arrest. *See Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968) (stating that "the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology"). The Supreme Court has used descriptive adjectives to characterize arrests in order to differentiate among various types of seizures—*e.g.,* a "formal arrest" or a "custodial arrest" is more intrusive than a "stop and frisk"—based upon the degree of intrusiveness of the seizure and the scope of the permissible incidental search. 2 LaFave at 394–95. Similar to the limited pat-down search for weapons and the seizure of the person necessary to effectuate that search under *Terry*, the statute in the present case mandates the issuance of a

notice or summons and authorizes a temporary seizure of the person in order to issue that notice or summons. Just as a *Terry* stop is not considered a full custodial arrest, the temporary seizure necessary to issue the notice or summons pursuant to section 18–18–406(2) also cannot be considered a full custodial arrest. The seizure of a person, therefore, does not automatically constitute an arrest and all arrests do not necessarily rise to the level of a full custodial arrest.

**10.** The Court expressly found it unnecessary to reach the issue of the authority to search incident to a type of stop "where the officer would simply issue a notice of violation and allow the offender to proceed." *Robinson*, 414 U.S. at 236 n. 6, 94 S.Ct. at 477 n. 6.

*See also New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). In *Bischofberger,* we noted: "A 'custodial arrest,' in the traditional sense of that term, refers to a police officer's seizure of a person for the purpose of taking that person to the stationhouse for booking procedures and the filing of criminal charges." *Bischofberger,* 724 P.2d at 662 n. 4. In *United States v. Mota,* 982 F.2d 1384, 1386 (9th Cir.1993), the United States Court of Appeals for the Ninth Circuit noted that a "custodial arrest" is necessary to support a search incident to arrest and that under case law in that Circuit, a person not taken into custody cannot be searched incident to arrest.

■ As noted above, however, a custodial arrest is inconsistent with express statutory language requiring the police officer to issue a summons. *See, e.g., Clyne,* 189 Colo. at 414–15, 541 P.2d at 72–73; *see also* § 16–2–201(1), 8A C.R.S. (1994 Supp.) (contrasting the issuance of a penalty assessment notice for a class 2 petty offense with the alternative of taking a defendant before a court). A statute that mandates issuance of a notice or summons and provides for release upon signing a promise to appear will thereby prohibit custodial arrests. *See, e.g., State v. Lamb,* 202 Ga.App. 69, 413 S.E.2d 511, 513 (1991).

A statute that mandates the issuance of a notice or summons, however, is consistent with a non-custodial arrest. *See Clyne,* 189 Colo. at 414–15, 541 P.2d at 72–73. A non-custodial arrest is made on probable cause, *see* 16–3–102, 8A C.R.S. (1986), but lacks the features, described above, of a custodial arrest.[11] A principal distinction is the duration of the authorized detention. For example, the temporary detention required to issue a penalty assessment notice after a defendant is arrested for a misdemeanor traffic offense does not rise to the level of a custodial arrest. *See* § 42–4–1501(4)(a), 17 C.R.S. (1993) (providing that arresting officer may issue a penalty assessment notice after arresting defendant for commission of a misdemeanor traffic offense); *see also Thomas v. State,* 614 So.2d 468, 471 (Fla.1993) (holding that a person charged with violating a city ordinance relating to traffic control may be detained only for the limited purpose of issuing a ticket, summons, or notice and may not be subjected to a full custodial arrest). If a defendant is to be released after a temporary detention, therefore, an arrest is non-custodial.

Subsection 18–18–406(2) permits non-custodial arrests but precludes custodial arrests. This is made entirely clear by the provision that the "arrested or detained person, in order to secure release from arrest or detention, shall promise in writing to appear in court by signing the notice or summons prepared by the arresting or detaining officer." § 18–18–406(2), 8B C.R.S. (1994 Supp.). If the statute were interpreted to allow custodial arrests, the police officer could choose to transport the suspect to police headquarters and book the suspect into jail solely for the purpose of issuing the requisite summons, which could have been accomplished when the officer initially stopped the suspect. An interpretation that defeats the legislative intent or leads to an absurd result will not be followed. *See Ingram v. Cooper,* 698 P.2d 1314, 1315 (Colo.1985). Furthermore, distinguishing between custodial and non-custodial arrests explains the apparent anomaly in the statutory language—*i.e.,* the authorization of an "arrest" while also requiring the issuance of a summons and the release of the suspect upon signing a promise to appear—by allowing a police officer to effectuate only a non-custodial arrest under subsection 18–18–406(2) for violation of subsection 18–18–406(1). By so construing "arrest" in subsection 18–18–406(2), we hold that the terms "arrest" and "detain" are used synonymously in that subsection.

11. In *Bischofberger,* we contrasted traditional custodial arrests, which require probable cause, with investigatory stops, which do not. *Bischofberger,* 724 P.2d at 662 n. 4. Investigatory stops provide an example of "limited forms of intrusion into a person's freedom of movement or personal security that are substantially less intrusive [than custodial arrests] in terms of duration, scope, and purpose." *Id.* A similar distinction can be made between the intrusiveness incident to a custodial arrest and that incident to a non-custodial arrest. *See infra,* Part IV.

### · B.

■ The prosecution argues that if the term "arrest" in the phrase "arrest or detention"—as employed in subsection 18–18–406(2)—is construed to refer to a temporary detention rather than a custodial arrest, the phrase will redundantly mean "detention or detention." Therefore, asserts the prosecution, the legislature must have intended different meanings for the terms "arrest" and "detention."

This argument neglects the fact that non-custodial arrests are sometimes referred to as "detentions" and sometimes as "arrests." In *Clyne*, the defendant's backpack was searched after he was arrested for hitchhiking, a violation of the Municipal Code of the City of Loveland, which had adopted by reference the Model Traffic Code for Colorado Municipalities. *Clyne*, 189 Colo. 412, 541 P.2d 71. Under the Municipal Code, which established a penalty scheme for traffic violations, the police were required, under the circumstances of that case, to issue a notice or summons to the defendant. *Id.* at 415, 541 P.2d at 73. We determined, therefore, that "a custodial arrest for a hitchhiking violation under the record here was not authorized and was therefore unlawful." *Id.* Because a full search incident to a custodial arrest was thus prohibited, we were required to determine whether the search that did occur under the circumstances of the case was proper. We stated: "The issue before this court is the permissible scope of a warrantless search incident to a *lawful noncustodial arrest* for a minor traffic violation." *Id.* at 413, 541 P.2d at 72 (emphasis added). In discussing this issue, we analyzed the standards that govern searches incident to arrests for "a minor traffic violation or for a minor municipal offense." *Id.* In *Clyne*, therefore, the non-custodial detention for a minor traffic offense was denominated an "arrest." *See also Mota*, 982 F.2d at 1388 (noting that under California law, after a person is *arrested* for an "infraction," the arresting officer is without legal authority to take the person into custody unless the person refuses to present identification or to sign a promise to appear); *Thomas*, 614 So.2d at 470–71 (holding that the word "arrest" in an ordinance "does not necessarily mean a full custodial arrest"); 2 Lafave § 5.2(h) at 466 (stating that "the temporary detention on the scene for purposes of giving a traffic citation ... might well be considered an arrest which is other than 'custodial' ").

Although non-custodial arrests are sometimes referred to as arrests, they have also been described merely as detentions. In *Bischofberger*, we described *Clyne* as involving "a *temporary detention* of a suspect pending the issuance of a summons for a minor traffic or ordinance violation." *Bischofberger*, 724 P.2d at 664 (emphasis in original). The phrase "non-custodial arrest" was not employed in that opinion. Similarly, in *People v. Meredith*, 763 P.2d 562, 565–66 (Colo.1988), we discussed the holding in *Clyne* exclusively in terms of "temporary detention" rather than "non-custodial arrest." In light of the fact that non-custodial arrests have been described both as arrests and as detentions, it is not unusual or significant that the legislature included both designations in subsection 18–18–406(2). The prosecution's argument that such an inclusion necessarily implies an intent to confer distinct meanings on the two terms thus fails.

Therefore, in the present case, the police were not permitted to make a custodial arrest of the defendant and thus were not permitted to make a full search incident to arrest as authorized under the *Robinson* line of cases. Rather, they were entitled only to make a non-custodial arrest for the purpose of issuing a notice or summons. To decide whether the cocaine found on the defendant was admissible, therefore, we must determine whether the search of the defendant exceeded the permissible scope of a search incident to a non-custodial arrest.

### IV. Search Incident to Non-Custodial Arrest

The proper scope of a search incident to a non-custodial arrest was directly addressed in *Clyne*. *Clyne*, 189 Colo. at 413, 541 P.2d at 72. In that case, we relied upon *People v. Valdez*, 182 Colo. 80, 511 P.2d 472 (1973), and *Cowdin v. People*, 176 Colo. 466, 491 P.2d 569 (1971), for guidance on this issue.

In *Cowdin,* this court reversed the defendant's conviction on the basis that evidence obtained from a search of his automobile incident to his arrest for reckless driving was improperly admitted. *Cowdin,* 176 Colo. at 471–73, 491 P.2d at 571–73. In *Valdez,* the defendant was arrested for violation of a municipal ordinance that prohibited entering a theater without paying an admission fee. *Valdez,* 182 Colo. at 82, 511 P.2d at 473. We ruled that evidence obtained as a result of a search incident to that arrest must be suppressed. *Id.* at 85, 511 P.2d at 474.

In both *Cowdin* and *Valdez,* we indicated that in the context of a search incident to arrest, an officer may conduct a "pat-down" search for weapons, under the standards established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),[12] as well as a search for instrumentalities or evidence of the specific crime for which the officer had probable cause to arrest. *Valdez,* 182 Colo. at 83–84, 511 P.2d at 473–74; *Cowdin,* 176 Colo. at 470–71, 491 P.2d at 571–72. However, when discussing these standards in the context of a search incident to arrest, we made no distinction between searches incident to custodial arrests and those made incident to non-custodial arrests.

As we noted in *Bischofberger,* the standards set forth in both *Cowdin* and *Valdez* as applied to *custodial* arrests have been invalidated by the United States Supreme Court in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and *Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. *Bischofberger,* 724 P.2d at 662–64. However, those standards remain viable in the context of *non-custodial* arrests.[13] In *Clyne,* we noted that *Robinson* and its companion case, *Gustafson,* concerned the standards applicable to a search incident to a *custodial* arrest. *Clyne,* 189 Colo. at 414, 541 P.2d at 72. We held, therefore, that *Robinson* and *Gustafson* did not control because under the facts in *Clyne,* a custodial arrest was not justified. *Id.* at 414–15, 541 P.2d at 72–73; *accord Thomas,* 614 So.2d at 471 (holding that *Robinson* and *Gustafson* are not controlling when the applicable ordinance or statute only allows the arresting officer to issue a citation or notice to appear); *State v. Martin,* 253 N.W.2d 404, 406 (Minn. 1977) (holding that the officer had no discretion to subject the arrestee to a custodial arrest for the petty misdemeanor offense of marihuana possession, therefore "the *Robinson–Gustafson* rule does not justify the search"). Rather, because the issue before

12. *See People v. Weston,* 869 P.2d 1293, 1296 (Colo.1994), for a recent articulation of these standards. Specifically, the officer may make a protective pat-down search of the arrestee when the "following requirements are met: ... (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose." *Id.; see also Clyne,* 189 Colo. at 413–14, 541 P.2d at 72 ("the scope of a search incident to an arrest for a minor traffic violation or for a minor municipal offense would be limited to a protective pat-down search for weapons where the officer formed a reasonable belief under the circumstances that the arrestee was armed and dangerous") (relying on *Valdez* and *Cowdin* as supporting authority).

13. This is consistent with decisions in other jurisdictions holding that a police officer cannot conduct a full search of an arrestee incident to a non-custodial arrest for a minor offense. *See, e.g., United States v. Mota,* 982 F.2d 1384, 1388–89 (9th Cir.1993) (holding that a custodial arrest for a minor infraction was without legal authority under California law and the search conducted incident thereto violated the Fourth Amendment); *Barnett v. United States,* 525 A.2d 197, 199 (D.C.1987) (holding that the police could not

make a custodial arrest, and full search incident thereto, for the violation of a pedestrian traffic regulation that authorized only a monetary sanction); *State v. Martin,* 253 N.W.2d 404, 406 (Minn.1977) (holding that a full custodial arrest for the possession of a small amount of marihuana was not authorized under Minnesota law, thus making the full search conducted incident thereto illegal). Although these decisions often use broad, sweeping language that may appear to prohibit any search incident to a non-custodial arrest, a more accurate reading of these holdings in light of the facts of each case supports the proposition—with which we agree—that the police may not use the occasion of a non-custodial arrest to make a full search of the arrestee under the *Robinson* line of cases, but may conduct a lawful search of the defendant on some other basis, *e.g.,* to effectuate a protective search for weapons under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See, e.g., Mota,* 982 F.2d at 1389 (stating that the custodial arrest was not authorized and "[a]bsent some other basis justifying the search, the evidence seized from appellants was unlawfully obtained, and should have been suppressed").

the court in *Clyne* was the permissible scope of a search incident to a lawful *non-custodial* arrest, we applied the standards of *Valdez* and *Cowdin*. *Clyne*, 189 Colo. at 414, 416, 541 P.2d at 72, 74.[14]

Therefore, in the context of a non-custodial arrest, the arresting officer is entitled only to: (1) conduct a pat-down search for weapons in circumstances where such a search would be authorized under the *Terry* line of cases; and (2) search for instrumentalities or evidence of the specific crime for which the officer had probable cause to make the arrest. Usually, in the case of non-custodial arrests for traffic violations, at most only a pat-down search will be indicated, since a search of the person generally will not reveal instrumentalities or evidence relating to such offenses. *See Valdez*, 182 Colo. at 84, 511 P.2d at 474 (observing that the scope of a search incident to an arrest for a minor traffic violation or a minor municipal offense will be quite limited because the instrumentalities or evidence of such crimes will be minimal or non-existent); *see also* Wayne R. LaFave, *"Case–by–Case Adjudication" versus "Standardized Procedures":*

*The Robinson Dilemma*, 1974 Sup.Ct.Rev. 127, 150–51.[15] Non-custodial arrests for possession of one ounce or less of marihuana in violation of subsection 18–18–406(1), in contrast, may permit not only a weapons frisk but also an extensive search for evidence of marihuana possession. Although such a search may be equal in scope to a full search incident to a custodial arrest, the police may not subject the person searched to custodial arrest unless further evidence justifying such an arrest is uncovered by the search incident to the non-custodial arrest. *See* 2 Lafave § 5.2(h) at 469–70 (noting that when there is no need for custody of the defendant but yet a need to acquire evidence from his person relating to the offense at issue, a search incident to a non-custodial arrest should not be limited to a *Terry*-type search).[16]

## V. Application to Present Case

In the present case, the defendant pointed out the marihuana to the officers, who then noticed a handgun lying on the floor. At that point, the officers handcuffed the defendant and conducted a search of the area and

**14.** In *Bischofberger*, we observed that *Clyne* "arguably retains vitality in those instances involving a *temporary detention* of a suspect pending the issuance of a summons for a minor traffic or ordinance violation." *Bischofberger*, 724 P.2d at 664 (emphasis in original). In *People v. Meredith*, 763 P.2d 562 (Colo.1988), we upheld a full search of the person incident to a statutorily authorized custodial arrest for driving without a license. In doing so, we stated: "Our holding ... limits *Clyne* to apply only to circumstances involving a *temporary detention of a traffic violator* pending the issuance of a summons or penalty assessment notice." *Meredith*, 763 P.2d at 565–66 (emphasis added). We intended by this passage in *Meredith* to restrict the standards in *Clyne* to those instances of temporary detention involving the issuance of a notice or summons as opposed to custodial arrests. While the majority of such instances will involve arrests for minor traffic violations, issuance of notices or summonses may be required in other contexts, such as those involving violations of municipal ordinances or, as in the present case, possession of one ounce or less of marihuana. Rather than being restricted to temporary detentions of a traffic violator pending the issuance of a summons or penalty assessment notice, *Clyne* should be restricted to any non-custodial arrest made pending the issuance of a summons or notice. Nothing in *Meredith* suggests that when issuance of a notice or summons is mandated by statute, a full body search that would be appropriate for a

custodial arrest is indicated merely because the summons or notice was issued for violation of a municipal ordinance or for a petty violation involving marihuana rather than for a traffic violation.

**15.** Some have argued that custodial arrests for minor traffic violations may be unconstitutional altogether. *See, e.g., Gustafson*, 414 U.S. at 266–67, 94 S.Ct. at 492 (Stewart, J., concurring) (stating that "a persuasive claim might have been made ... that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments"); 2 LaFave §§ 5.1(h), 5.2(h); Barbara C. Salken, *The General Warrant of the Twentieth Century? A Fourth Amendment Solution to Unchecked Discretion to Arrest for Traffic Offenses*, 62 Temp.L.Rev. 221 (1989).

**16.** *Cf. Cupp v. Murphy*, 412 U.S. 291, 294, 296, 93 S.Ct. 2000, 2003, 2004, 36 L.Ed.2d 900 (1973) (holding the taking of fingernail scrapings under protest from a suspect who had been detained but not formally arrested for a strangulation murder did not violate the Fourth or Fourteenth Amendments in view of "the existence of probable cause, the very limited intrusion undertaken incident to the station house detention, and the ready destructibility of the evidence.").

of his person. After the police found a bag of cocaine on the defendant's person, they told him that he was under arrest for possession of cocaine.

▉ Prior to being told that he was under arrest, the defendant had been subjected only to a non-custodial arrest. The fact that the police handcuffed him in itself did not necessarily transform the detention into a custodial arrest. *See United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir.1993) (noting the recent trend allowing police to use handcuffs during a *Terry* stop and observing that nine United States courts of appeals have determined that such measures do not necessarily turn a lawful *Terry* stop into an arrest under the Fourth Amendment). The non-custodial arrest and presence of a visible handgun entitled the police to make a pat-down search for weapons.[17] Furthermore, the non-custodial arrest for possession of one ounce or less of marihuana entitled the police to search for further evidence of marihuana possession. Therefore, the search of the defendant's person that produced the cocaine fell within the proper scope of the search incident to this particular non-custodial arrest.[18]

In resolving the defendant's motion to suppress, the trial court was correct in ruling that the only option available to the officers was to issue a summons. The trial court was also correct to the extent that it ruled that the officer had no right to make a custodial arrest of the defendant for possession of an ounce or less of marihuana. The trial court erred, however, in ruling that the officer was not entitled to make a search incident to an arrest. Although it is true that a full search incident to a custodial arrest was prohibited in this context, the officer was entitled to make a limited search incident to a non-custodial arrest. The proper scope of this search, under the circumstances of this case, was coextensive with a full custodial search because subsection 18–18–406(1) prohibits the possession of marihuana, thereby entitling the officer to search the defendant for marihuana.[19] Upon properly searching the defendant incident to a non-custodial arrest, the police officers discovered the cocaine which then allowed the officers to effectuate a custodial arrest. Therefore, the trial court erred in suppressing the cocaine.

## VI. Strip Search

▉ The defendant argues that even if the search was otherwise proper, the cocaine should be suppressed as the fruit of an illegal strip search conducted in violation of section 16–3–405(4), 8A C.R.S. (1986). We decline to reach this question because it was not addressed by the trial court and in any event is not appropriate for review under C.A.R. 4.1.

The trial court suppressed the cocaine based on its construction of subsection 18–18–406(2) and it did not reach the strip search issue. Moreover, it is well settled that C.A.R. 4.1 limits the types of rulings from which interlocutory appeals can be taken, and it cannot be employed to obtain pretrial review of orders denying suppression of evidence. *See, e.g., People v. Weston,* 869 P.2d 1293, 1297 (Colo.1994). Although the prosecution may file an interlocutory appeal to review an order of the district court granting a defendant's motion to suppress evidence, a defendant is not entitled to interlocutory relief under C.A.R. 4.1. *E.g., id.; People v. Barton,* 673 P.2d 1005, 1006 n. 1 (Colo. 1984); *People v. Traubert,* 199 Colo. 322, 330, 608 P.2d 342, 347–48 (1980). Thus, we decline to address the strip search issue in this interlocutory appeal.

17. We recognize that the physical proximity of the arrestee to the officer while effectuating a non-custodial arrest places the officer at risk. In determining whether an officer had "a reasonable basis to suspect that the person might be armed and dangerous," *Weston,* 869 P.2d at 1296, a trial court should give attentive consideration to opinions of police officers when based on experience and articulable facts.

18. The issues of whether the search was an illegal strip search, *see* § 16–3–405, 8A C.R.S. (1986), and if so, whether the cocaine must be suppressed as a consequence were not addressed by the trial court and are not before us in this interlocutory appeal. See *infra,* Part VI.

19. Even in this case, however, prior to discovery of the cocaine the officer could not have taken the defendant into full custody by taking him to the police station for booking.

## VII. Conclusion

Based upon the foregoing analysis, we hold that the suppression order must be reversed and the case remanded to the district court for further proceedings consistent with this opinion.

ROVIRA, C.J., concurs in the result only.

VOLLACK and MULLARKEY, JJ., join in the concurrence.

Chief Justice ROVIRA, concurring in result only:

I agree that the trial court erred in suppressing the cocaine found on the defendant. However, I do not agree with the majority opinion's interpretation of section 18–18–406(2), 8B C.R.S. (1994 Supp.) and the distinction it draws between custodial and noncustodial arrests.

The majority opinion holds a police officer may place a suspect under non-custodial arrest, as opposed to a custodial arrest, when issuing a written notice or summons to a person possessing one ounce or less of marihuana under section 18–18–406(2). The court defines the scope of a search incident to a non-custodial arrest as (1) a pat down for weapons, and (2) a search for instrumentalities of crime.

The distinction between custodial and noncustodial arrests has appeal to justify the result here because of the ambiguity of section 18–18–406(2) which juxtaposes arrest with the issuance of a summons. I believe it is an unworkable distinction.

## I

Section 18–18–406(2), 8B C.R.S. (1994 Supp.) provides that whenever a person is arrested or detained, the arresting or detaining officer shall prepare a summons for that person to appear in court. The ambiguity in section 18–18–406(2) results from the use of the words "arrest or detention" in reference to action that may be taken against a person for possession of one ounce or less of marihuana and the requirement that the arresting or detaining officer "shall" prepare a written notice or summons. The majority interprets section 18–18–406(2) to allow only a non-custodial arrest under the premise that a custodial arrest is inconsistent with mandatory issuance of a summons.

The majority's distinction between custodial and noncustodial arrest has no statutory foundation. In interpreting a statute, the court must give effect to the General Assembly's intent and give consistent and sensible effect to all of its language.

Nowhere in the Colorado Revised Statutes is the term "arrest" defined nor is there any indication that the legislature intended to divide arrests into specific categories. Section 16–3–102, 8A C.R.S. (1986) grants a peace officer the power to arrest a person in three distinct situations.[20] Furthermore, section 18–18–406(2)'s employment of the word "arrest" does not designate any special category of arrest. Reading the criminal statutes as a whole, it is obvious that an arrest pursuant to section 18–18–406(2) is allowed when an officer has probable cause to believe an offense has been committed by the person arrested.

By contrasting a custodial arrest with a detention for the purpose of issuing a summons, the majority suggests the courses of action are mutually exclusive.[21] However,

---

**20.** Section 16–3–102, 8A C.R.S. (1986) allows a peace officer to arrest a person: 1) when a warrant has been issued; 2) a crime was committed in the officer's presence; and, 3) the officer has probable cause to believe an offense was committed and the suspect committed the offense.

**21.** The majority cites to § 16–2–201(1), 8A C.R.S. (1986 & 1993 Supp.) and *People v. Clyne*, 189 Colo. 412, 414–15, 541 P.2d 71, 72–73 (Colo. 1975) for support of this contention. Maj. op. at 317. Section 16–2–201(1) gives an officer the *option* of issuing a penalty notice or taking a

suspect before a county court judge. This is different from the procedure in section 18–18–406(2) which commands issuance of a summons. A summons requires the person to appear before a judge. § 16–1–105(17), 8A C.R.S. (1986).

Furthermore, *Clyne* is the only case I am aware of which actually uses the term non-custodial arrest. Even the cases discussing *Clyne* do not use the phrase "non-custodial arrest" but rather refer to the stop as a temporary detention. *People v. Meredith*, 763 P.2d 562 (Colo.1988); *People v. Bischofberger*, 724 P.2d 660 (Colo. 1986). *Bischofberger* limits *Clyne's* applicability

the two terms also appear in section 16–3–105, 8A C.R.S. (1986) which provides for the release of an arrested person if an officer is satisfied the arrested person will obey a summons. Other states have statutes specifically allowing officers to arrest and release persons after they receive a summons without making the custodial/non-custodial distinction.[22] These statutes suggest an arrest and the issuance of a summons are not incompatible. Therefore, although issuing a summons may be mandated, it does not preclude an officer from arresting a person by taking the individual into custody, conducting a lawful search incident to the arrest and subsequently issuing the requisite summons.

## II

The need for the custodial/non-custodial distinction hinges on the majority's definition of custodial arrest. The majority explains that a custodial arrest is defined as an arrest for the purpose of taking the person down to the stationhouse for booking procedures. Maj. op. at 316. The majority distinguishes a non-custodial arrest on the basis that such an arrest involves only a temporary detention while an officer issues a summons. *Id.* Both must be supported by probable cause. *Id.* at 317.

I do not agree with the majority's narrow definition of custodial arrest or its attempt to draw a distinction with a non-custodial arrest. The majority cites to *People v. Bischofberger,* 724 P.2d 660, 664–65 (Colo.1986) for support of its custodial arrest definition. Maj. op. at 316. However, the authorities cited in *Bischofberger,* 724 P.2d at 662 n. 4, in support of this definition state that an arrest usually means a trip to the stationhouse, but they do not divide arrest into custodial/non-

custodial categories. *See Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968); *People v. Tottenhoff,* 691 P.2d 340, 343–44 (Colo.1984). *Black's Law Dictionary* defines custodial arrest as "[c]onfinement or *detention* by police or government authorities during which a person is entitled to certain warnings · as to his rights when questioned" (emphasis added) but it does not require a suspect to be taken to the station. *Black's Law Dictionary* 384 (6th ed.1990).

Courts, including the United States Supreme Court, have added descriptive adjectives to the term arrest.[23] Those adjectives include: custodial arrest, *Gustafson v. Florida,* 414 U.S. 260, 264, 94 S.Ct. 488, 491, 38 L.Ed.2d 456 (1973); full custody arrest, *United States v. Robinson,* 414 U.S. 218, 221, 94 S.Ct. 467, 470, 38 L.Ed.2d 427 (1973); full-fledged, *albeit* informal arrest, *United States v. Corral–Franco,* 848 F.2d 536, 541 (5th Cir.1988); formal arrest, *People v. Thomas,* 839 P.2d 1174, 1178 (Colo.1992); and full-scale arrest, *People v. Severson,* 39 Colo.App. 95, 98, 561 P.2d 373, 375 (1977). These distinctions turn on the concept of custody and not on whether an officer transports a suspect to the station even though that may occur. They do not create new categories of arrests with different standards to be applied.

## III

Custody is determined by whether a reasonable person in the suspect's position would consider himself deprived of his freedom of action in any significant way.[24] *Thomas,* 839 P.2d at 1178; *People v. Harper,* 726 P.2d 1129, 1131 (Colo.1986). The Supreme Court has held custody attaches whether or not an officer brings a person to

to temporary detentions for minor traffic or ordinance violation. *Bischofberger,* 724 P.2d at 664.

**22.** See Cal.Penal Code § 849 (1985) (an officer may release any person arrested without a warrant after giving a summons); Del.Code Ann. tit. 11 § 1908 (1987) (peace officer may release from custody anyone arrested without a warrant); Mich.Stat.Ann. § 9.2427 (1994–95 Supp.) (an officer may release a person from custody).

**23.** Wayne LaFave explains that the seemingly redundant phrase "custodial arrest" is distin-

guishable from those arrests that are followed by release at the scene. 2 Wayne R. LaFave, Search and Seizure § 5.1(a) at 395 (2d ed.1987) (hereinafter LaFave). He states the distinction is important in terms of the incidental searches which follow the arrest. *Id.*

**24.** Custodial arrest has been described as a situation in which the officer and arrestee are going to be in close proximity for some time as a consequence of the arrest. LaFave § 5.2(g) at 463.

the station. "An arrested person is not invariably taken to a police station or confined; if an arrestee is taken to the police station, that is no more than a continuation of custody inherent in the arrest status." *Illinois v. Lafayette,* 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983). A custodial arrest occurs regardless of whether a person is eventually brought to the station. All arrests are inherently custodial.

The majority opinion relies heavily on *United States v. Robinson, United States v. Gustafson* and *People v. Bischofberger* to uphold the custodial/non-custodial distinction.[25] A California court reviewed both *Robinson* and *Gustafson* and rejected the contention that a custodial arrest could only result upon the arresting officer's intent to book the defendant. *In re Demetrius A.,* 208 Cal.App.3d 1245, 256 Cal.Rptr. 717, 719 (1989). The court held that the *Robinson–Gustafson* rule for searches incident to custodial arrests was applicable where the defendant was lawfully arrested and taken into custody by the officer in order to transport the defendant to his home. *Id.* "[T]he lawfulness of the search turns not on whether the officer intended to release the defendant after having him in custody, but on whether the officer was justified in arresting the defendant and taking him into custody in the first place." *Id.*

The distinction between custodial and non-custodial arrests is nebulous at best. The majority's definition of custodial arrest is incorrect, thus making it unnecessary to distinguish it from a non-custodial arrest.

## IV

This case may be analyzed under existing Fourth Amendment principles without further confusing an already complex area of law. Officer Bolte had probable cause to arrest the defendant for violating section 18–18–406(2) after the defendant pointed out the

marihuana filled cigars. Considering the officer's observation of the handgun, it was lawful to thereafter arrest Bland, search him incident to that arrest and upon finding cocaine, transport him to the police station. The defendant was obviously in custody because a reasonable person would not feel free to leave an officer's presence when handcuffed in a motel room.[26] The fact the statute required a summons be issued for the marihuana violation does not nullify the lawfulness of the custodial arrest allowed by statute and the search incident to it.

"[W]e must resist 'the understandable temptation to be responsive to every relevant shading of every relevant complexity' lest we end up with 'a fourth amendment with all the character and consistency of a Rorschach blot.'" Wayne R. LaFave, *"Case–by–Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup. Ct.Rev. 127, 142 (citing Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn. L.Rev. 349, 375 (1974)). The majority bifurcates arrest law solely to rectify the ambiguity of this statute.

In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the court stated

> [The] Fourth Amendment doctrine, given force and effect by the exclusionary rule is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions are almost impossible to apply by the field officer. *Id.* at 458, 101 S.Ct. at 2863 (quoting Wayne R. LaFave, *"Case-by–Case Adjudication" versus "Standard-*

---

**25.** The majority stresses the use of the phrase "custodial arrest" in each of these cases.

**26.** It is axiomatic that the majority points out that the handcuffs by themselves do not result in a custodial arrest. The fact that an officer chooses to use handcuffs will not by itself result in an arrest, *see e.g., United States v. Perdue,* 8 F.3d

1455, 1463 (10th Cir.1993), however, it is inarguable that such a situation necessarily entails a custodial situation. *Id.* at 1464.

Although a custodial situation will not automatically give rise to an arrest, I fail to comprehend how an arrest may be had without the arrestee inherently being in custody.

*ized Procedures": The Robinson Dilemma*, 1974 Sup.Ct.Rev. 127, 141).

The majority's definition of custodial arrest and the distinction drawn between it and non-custodial arrest, the cornerstone of the opinion, does not withstand careful scrutiny. By establishing distinct categories of arrest, the majority has created a tenuous and burdensome distinction, one extremely difficult for practical application by the police who must comply with Fourth Amendment law.

The officers in this case did not violate the defendant's Fourth Amendment rights. I would not suppress the cocaine found on the defendant, and therefore, I concur with the majority's result only.

I am authorized to say that Justice VOLLACK and Justice MULLARKEY join in this concurrence.